**RESOLUTION TRUST CORPORATION, as Receiver for Peoples Federal Savings Association, Plaintiff,**

v.

**Philip A. RYAN, Jr., David A. Treutel, Sr., Arthur J. Chapman, Arland P. Guizerix, Edward C. Milner, David A. Treutel, Jr., Defendants.**

**Civ. A. No. J91–0469(L)**

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 28, 1992.

P.N. Harkins, III, Watkins & Eager, Jackson, Miss., for plaintiff.

Michael B. Wallace, Phelps Dunbar, Jackson, Miss., Jory M. Hochberg, Sr. Trial Atty., Office of Thrift Supervision, Washington, D.C., for T. Timothy Ryan, Jr.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Resolution Trust Corporation, as receiver for Peoples Federal Savings Association, to dismiss the counterclaims asserted against it by defendants Philip A. Ryan, Jr., David Treutel, Sr., Arthur J. Chapman, Arland P. Guizerix, Edward C. Milner and David A. Treutel, Jr., on the grounds that this court lacks subject matter jurisdiction over those claims and further that the counterclaims fail to state claims upon which relief can be granted. There is also pending before the court a separate motion to dismiss the counterclaims by T. Timothy Ryan, Jr., Director, Office of Thrift Supervision, named by the defendants as an additional defendant to their counterclaims. Defendants Ryan and

Treutel, Sr. have responded to both motions, and the court has considered the memoranda of authorities submitted by the parties in ruling on these motions.[1]

## BACKGROUND

The defendants in this case are all former officers and/or directors of the Peoples Federal Savings Bank of Bay St. Louis, Mississippi (Peoples Bank).[2] On February 8, 1989, the Director of the Office of Thrift Supervision (OTS), declared Peoples Bank insolvent and ordered it closed. OTS placed the Bank in receivership and appointed Resolution Trust Corporation (RTC)[3] its receiver. OTS immediately authorized RTC's organization of Peoples Federal Savings Association (Peoples Association) and appointed RTC conservator of Peoples Association.

Ultimately, on August 8, 1991, OTS determined that Peoples Association should be liquidated and the Association was thus placed in receivership and RTC appointed its receiver. In the interim, however, OTS had advised defendants Ryan and Treutel, Sr. that an investigation of Peoples Bank had revealed the existence of "numerous unsafe and unsound conditions," and threatened to institute public enforcement proceedings against them if they refused to consent to the entry of a cease and desist order and prohibition order.[4]

## THE LITIGATION

When Peoples Association was organized, RTC, in its capacity as receiver of Peoples Bank, entered into a purchase and assumption agreement with Peoples Association pursuant to which RTC as Peoples Bank receiver transferred to the Association certain assets of the failed bank, including all actions, judgments or claims of Peoples Bank Receiver (RTC) against "any officer, director ... or any other person employed or retained by the Failed Association on or prior to the Association Closing arising out of any act or omission of such person in such capacity." In accordance with the authority granted under this agreement and under the terms of FIRREA,[5] RTC instituted the present action against defendants alleging that they failed to exercise due care and diligence in the performance of their duties as officers and directors, as a result of which Peoples

---

1. RTC initiated the present action by the filing of an application to freeze certain assets of defendant Ryan pursuant to 12 U.S.C. § 1821(d)(18) and (19), a matter which will be discussed more fully *infra*. Ryan, initially named as the sole defendant, filed his answer to the complaint on November 12, 1991 and included therein the counterclaims which are the subject of the present motion. Thereafter, on May 1, 1992, RTC filed a complaint in this cause naming as defendants Ryan and defendant Treutel, Sr., who filed an amended answer and counterclaim. Then, on July 6, 1992, RTC filed an amended complaint, adding defendants Chapman, Guizerix, Milner and Treutel, Jr. Defendants responded in a collective answer, with counterclaims, on July 24, 1992. The motions filed by RTC and OTS were originally filed with reference solely to the counterclaims asserted by Ryan. The motions have been amended each time defendants have been added, but have not changed in substance.

2. Defendants Ryan and Treutel, Sr. served as officers and directors; the remaining defendants served as directors.

3. RTC was created by Section 501(b) of the Financial Institutions Reform and Recovery Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183 (1989) (codified throughout the United States Code), 12 U.S.C. § 1441a(b) (West Supp.1991), for the purpose of "contain[ing], manag[ing], and resolv[ing] failed savings associations," 12 U.S.C. § 1811 note (West 1989), and largely assumed the role formerly held by the Federal Savings and Loan Insurance Corporation (FSLIC) with respect to failed insured savings and loan institutions, *see* id.

4. The circumstances here mentioned will be described and discussed in greater detail, *infra*.

5. The RTC, in its capacity as receiver, inherits all of the bank's rights and obligations. 12 U.S.C. § 1821(d)(2)(A)(i). Further, FIRREA expressly authorizes RTC to bring a civil action against officers and directors "for gross negligence, including any similar conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law," 12 U.S.C. § 1821(k), and may recover "damages determined to result from the improvident or otherwise improper use or investment of any insured depository institution's assets," including principal losses and appropriate interest, 12 U.S.C. § 1821(*l*).

Bank suffered substantial losses.[6] The complaint included counts for breach of fiduciary duty, negligence, gross negligence and waste, and sought recovery of compensatory damages sustained by the Bank as the result of defendants' alleged acts and omissions. Defendants collectively answered the complaint of RTC, denying any and all wrongdoing alleged and seeking by counterclaim a declaratory judgment against not only RTC, but also OTS, which they named as an additional defendant to their counterclaim, to the effect that they had acted prudently and in accordance with their fiduciary duties while in the conduct of the investment program of Peoples Bank. The defendants sought declaratory relief to the effect that they did not act negligently, grossly negligently or fraudulently and incurred no liability to OTS, RTC or any other entity. They also requested a declaratory adjudication that a certain letter of December 20, 1989, concerning the Bank Board's stop loss policy, created no enforceable legal obligation in favor of RTC, OTS or any other entity. Defendants Ryan and Treutel, Sr., who had been previously advised by the OTS that it intended to seek an order of prohibition against them barring them from employment in any federally insured or regulated financial institution, filed a counterclaim requesting a declaratory judgment that

they had committed no act which would bar them from such employment. Finally, in addition to the claims alleged by the other defendants, Ryan asserted a counterclaim for money damages against RTC for the tort of conversion, contending that RTC had wrongfully seized possession of and withheld from Ryan a check in the amount of $74,013.71 issued by the Deposit Guaranty National Bank in its capacity as Trustee for the Peoples Federal Retirement Fund, representing a distribution of Ryan's interest in the Peoples Bank retirement fund.

RTC and OTS contend on their present motions that this court lacks jurisdiction over any of the counterclaims asserted by the defendants. The positions of these parties will be considered in turn.

## COUNTERCLAIM AGAINST OTS

Section 1818 of Title 12 establishes the authority of the "appropriate regulatory agency," here OTS, to bring cease and desist, removal and prohibition actions, and provides the administrative framework for the commencement and determination of such actions. As is pertinent here, § 1818(b) authorizes OTS to issue a "notice of charges" against any institution-affiliated party (including current and former officers and directors)[7] where there is reasonable cause to believe that such party has,

---

**6.** The complaint alleged that defendants' acts and omissions were as follows:

> (a) Causing or permitting Peoples Bank to make imprudent loans in violation of prudent lending practice;
> (b) Causing or permitting Peoples Bank to maintain inadequate loan documentation contrary to prudent lending practice;
> (c) Causing or permitting Peoples Bank to make loans with inadequate financial information relative to the creditworthiness of the borrower, the borrower's respective source of repayment, and the borrower's security, if any, contrary to prudent lending practice;
> (d) Causing or permitting Peoples Bank to make loans without adequate underwriting, without the receipt of adequate financial statements or projections or other required credit or financial information, without reasonable attempts to verify the adequacy of information submitted by the borrower, and without undertaking or receiving the results of independent credit checks or reports contrary to prudent lending practice;

> (e) Failing to protect the assets of Peoples Bank by obtaining sufficient collateral and requiring, where appropriate, adequate personal guarantees and/or borrow equities;
> (f) Failing to exercise independent business judgment for the benefit of Peoples Bank;
> (g) Failing to adhere to the established loan policies and procedures of the institution;
> (h) Failing to take reasonable and prudent steps to preserve and enhance the value of the business and assets of Peoples Bank;
> (i) Failing to institute reasonable, prudent and timely controls, policies, or guidelines with respect to the institution's investment activities so as to preserve and enhance the assets of the institution and/or to protect against foreseeable losses and/or to avoid or correct any improper speculative investment practices.

**7.** 12 U.S.C. § 1813(u)(1) defines an "institution-affiliated party" as "any director, officer, employee, or controlling stockholder ... of, or agent for, an insured depository institution."

*inter alia,* engaged in unsafe or unsound practice in conducting the business of an insured depository institution or has violated any law, rule or regulation, or any written agreement entered into with OTS. The statute provides that upon the finding of such violation or practice after notice and hearing, OTS may take affirmative corrective action, including, in certain circumstances, requiring such party to make restitution for losses caused. Section 1818(e) grants OTS the additional authority to institute proceedings against any institution-affiliated party to "prohibit any further participation" by such party in federally insured or regulated banks if the OTS determines that such party has participated in unsafe or unsound banking practices or has breached his fiduciary duty and thereby caused the bank to suffer financial loss or other damage, or caused prejudice to the interests of the bank's depositors. Finally, the OTS may assess a civil money penalty against an institution-affiliated party for certain specifically identified unlawful conduct. 12 U.S.C. § 1818(i)(2).

On July 10, 1991, OTS informed the former officers of Peoples Bank, including Ryan and Treutel, Sr., that as a result of an investigation of the Bank, "numerous unsafe and unsound conditions were found to exist, including the commission of speculative options trading made contrary to the board established internal policies." The OTS advised that "[t]he transactions were taken in breach of your fiduciary duty to comply with board established policies and knowingly, with your direct oversight and initiation of the trading activity." The OTS requested that each officer sign a cease and desist consent order requiring payment to OTS of $500,000 in restitution under § 1818(b)(6)(A) and prohibiting their future participation in the thrift industry under Section 1818(e), failing which, OTS advised, it would proceed with a recommendation

that a notice of charges be issued and would pursue the matter in a public administrative hearing. In subsequent correspondence, OTS warned that the officers' failure to execute consent prohibition orders would result in the OTS's expanding the scope of its investigation into these defendants' activities in connection with the Bank and further advised that additional enforcement actions, such as the imposition of civil money penalties under § 1818(i)(2), would be considered. Again, the OTS indicated that it might file a formal notice of charges, thus triggering an administrative hearing.

Ryan and Treutel Sr. did not and have not signed the consent orders as requested by OTS, yet to date OTS has not instituted any formal enforcement proceedings against them. Nevertheless, in their answer to RTC's complaint, defendants Ryan and Treutel Sr. have named OTS as a defendant to a counterclaim seeking a declaratory judgment that these defendants "have committed no act which could bar them from employment in financial institutions regulated and insured by the United States." In addition, all of the defendants have asserted a counterclaim against OTS and RTC for a declaratory adjudication that a certain letter from Peoples Bank's board of directors to OTS dated December 20, 1989, concerning the Board's stop loss policy, created no enforceable legal obligation in favor of RTC, OTS or any other entity.[8]

OTS has moved to dismiss the claims asserted against it by defendants contending that the judicial intervention sought by defendants is explicitly proscribed by FIR-REA, and in particular § 1818(i) which provides:

> [E]xcept as provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or

---

**8.** In their brief in opposition to RTC's and OTS's motions, defendants state that this letter was "mentioned" in RTC's original application for temporary restraining order against Ryan, and that it "figure[d] prominently" in RTC's complaint, though it has not yet been made the subject of any claim by RTC or OTS. The court is unaware of the content of this letter, and has

not been made aware of the role of the letter in any of the proceedings against defendants. The court assumes that defendants anticipate that RTC and/or OTS will eventually contend that defendants violated some Board policy evidenced by the letter, or that the letter represented an agreement of the Board with OTS and/or RTC which was breached by defendants.

enforcement or any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order.[9]

In addition, OTS points out that § 1818(h) limits judicial review of final orders resulting from enforcement proceedings by OTS to "the court of appeals of the United States for the circuit in which the home office of the depository institution is located, or in the United States Court of Appeals for the District of Columbia Circuit."

 That Congress intended to provide OTS with the authority to initiate and pursue enforcement actions, and to fashion appropriate remedies without interference from the district courts, is clear from the terms of § 1818. That it effected this intent by restricting the district court's jurisdiction over such matters is likewise manifest. Recently, in *Board of Governors of Federal Reserve System v. MCorp Financial, Inc.,* — U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), the Supreme Court, citing the "plain, preclusive language" of § 1818(i)(1), rejected the argument that a district court sitting in bankruptcy had jurisdiction to enjoin enforcement proceedings under either the automatic stay provisions of 11 U.S.C. § 362 or the jurisdictional grant provided to district courts in bankruptcy proceedings by 28 U.S.C. § 1334(b). *Id.,* — U.S. at ——, 112 S.Ct. at 465 ("the specific preclusive language in 12 U.S.C. § 1818(i)(1) (1988 ed. Supp. I) is not qualified or superseded by the general provisions governing bankruptcy proceedings on which MCorp relies."). The Court concluded that "the clarity of the congressional preclusion of review" in § 1818(i)(1), coupled with the "meaningful and adequate opportunity for judicial review" by the court of appeals following a final administrative order, provided "clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings." *Id.,* — U.S. at ——, 112 S.Ct. at 466.

 Defendants implicitly concede that the effect of the relief they seek in this court is to enjoin or prevent the OTS from proceeding with enforcement proceedings against them.[10] That such is the nature of their action can hardly be denied. However, defendants deny the applicability of the Court's ruling in *MCorp* and attempt to distinguish that case on the basis of the bankruptcy context in which it was decided. The distinction is of no import as to the issue of this court's jurisdiction, though, as the *MCorp* decision was explicitly predicated upon the clear preclusive effect of § 1818(i)(1). That the same result would enure irrespective of the bankruptcy provisions at issue in *MCorp* is certainly implicit in the opinion.

 Moreover, even prior to the Supreme Court's decision in *MCorp,* the Fifth Circuit had accorded § 1818(i)(1) the preclusive effect obviously intended by the statute. In *Groos National Bank v. Comptroller of Currency,* 573 F.2d 889 (5th Cir. 1978), a depository institution and its controlling shareholder sought essentially the same relief as that pursued by defendants in the case at bar, to-wit, a declaratory judgment that they had committed no violations of § 1818(b). The Fifth Circuit in *Groos* affirmed the district court's ruling that it lacked jurisdiction to issue the requested declaratory judgment since it would have the effect of circumventing the

---

**9.** There are exceptions to this limitation on jurisdiction of the district courts, none of which apply under the circumstances of this case. For example, the district courts are granted jurisdiction to set aside, limit or suspend temporary cease and desist and suspension orders issued by OTS pending the completion of administrative proceedings, 12 U.S.C. § 1818(c)(2) and (f); the OTS has issued no orders in the case at bar but merely threatened the institution of enforcement actions. The district courts are further granted jurisdiction to enforce orders which have been issued by OTS, 12 U.S.C. § 1818(d) and (i)(1), and to enforce subpoenas in connection with proceedings, examinations and investigations initiated by OTS, 12 U.S.C. § 1818(n).

**10.** OTS has threatened enforcement proceedings against Ryan and Truetel, Sr., but to date has initiated no administrative proceedings against any of the defendants. Clearly, however, this court has no greater power to enjoin the commencement of enforcement proceedings than it does to enjoin ongoing administrative proceedings.

administrative machinery put in place by § 1818 to permit the appropriate regulatory agency—there, the Comptroller of the Currency—to proceed with enforcement actions. The court observed that the collective provisions of § 1818 established "a closely meshed administrative structure through which the Comptroller may curtail unsafe banking practices or legal violations through cease and desist orders that are reviewable in the circuit courts and, where necessary, may provide interim security through temporary orders that may be challenged or enforced through the district courts." *Id.* at 894. The court then concluded:

> The district court ruled that it had no jurisdiction to issue such a declaratory judgment, since 12 U.S.C. § 1818(i) withdrew its jurisdiction. We agree. The bank and Manges requested an injunction as well as a declaratory judgment in their favor; section 1818(i) in terms removes the court's jurisdiction to issue an injunction affecting the regulatory agency's notice or order, except as provided in section 1818 proceedings and review. We think that appellant's action for declaratory judgment also falls within the section's removal of jurisdiction over actions that "otherwise" affect the "issuance or enforcement of any notice or order." *Section 1818 as a whole provides a detailed framework for regulatory enforcement and for orderly review of the various stages of enforcement and section 1818(i) in particular evinces a clear intention that this regulatory process is not to be disturbed by untimely judicial intervention, at least where there is no "clear departure from statutory authority."*

*Groos,* 573 F.2d at 895 (citation omitted) (emphasis supplied); *see also Federal Deposit Ins. Corp. v. Bank of Coushatta,* 930 F.2d 1122, 1126 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 170, 116 L.Ed.2d 134 (1991) (same) (quoting *Groos); Greenberg v. Comptroller of Currency,* 938 F.2d 8 (2d Cir.1991) (citing section 1818(h) and (i) in affirming district court's dismissal of complaint by former officers and directors of failed banking institution seeking to enjoin Comptroller from going forward with administrative enforcement proceedings under § 1818, including proceedings to assess civil money penalties and to prohibit directors from further participating in banking business); *Abercrombie v. Office of Comptroller of the Currency,* 833 F.2d 672, 674–75 (7th Cir.1987) ("[Section] 1818(i)(1) explicitly and unequivocally withdraws jurisdiction from all other courts 'to affect by injunction or otherwise' CMP assessments" by the Comptroller). This court is similarly compelled to conclude that it has no jurisdiction to grant the relief requested by defendants against OTS, jurisdiction having been expressly withheld from the district courts by the statute at issue.

■ Defendants alternatively contend that their counterclaim against OTS is authorized by Rules 13 and 19 of the Federal Rules of Civil Procedure and that this court may therefore exercise ancillary or supplemental jurisdiction over it. More particularly, they maintain that OTS has been properly joined as a "necessary party" to their counterclaim under Rule 19(a) of the Federal Rules of Civil Procedure because of the action which RTC has brought before this court in which it asserts virtually the same claims against defendants and seeks essentially the same relief. Defendants argue that in the absence of OTS, they will be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" because OTS and RTC are pursuing the same claims against them, RTC in this action and OTS in administrative enforcement proceedings. *See* Fed.R.Civ.Proc. 13(h) ("Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20."). Defendants' position is without merit. The Federal Rules of Civil Procedure do not provide a key by which defendants might unlock the doors to this court and thereby escape the jurisdictional bar of § 1818(i)(1) since the Rules do not themselves contain any grant of jurisdiction. In addition to Rule 82, which states that the Rules "shall not be

construed to extend or limit the jurisdiction of the United States district courts....," Rule 13(d) specifically provides that Rule 13 "shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits against the United States or an officer or agency thereof." Where jurisdiction has been withdrawn from the district courts by Congress, procedural rules cannot be utilized as a means of circumventing that extraction of jurisdiction. *See Federal Sav. & Loan Ins. Corp. v. Shelton,* 789 F.Supp. 1367, 1373 (M.D.La.1992) ("Not only is there no statutory basis for jurisdiction over the counterclaim, FIRREA contains a divestiture of jurisdiction ... which clearly prevents this Court from exercising ancillary jurisdiction."); *United States v. Altman,* 762 F.Supp. 139, 143–44 (S.D.Miss.1991) (rejecting contention that ancillary jurisdiction attached to third-party complaint filed against RTC; "claims asserted against RTC that fall within the scope of section 1821(d)(13)(D) must comply with the procedural requirements of FIRREA and cannot fall within the ancillary jurisdiction of the Court merely because they are asserted in a third-party complaint.").

■ Defendants urge the possibility of inconsistent results and possible res judicata implications as a consequence of the two proceedings against them, one by the OTS and the other being this proceeding by RTC, as a basis for either dismissing RTC's complaint against them, or alternatively, asserting jurisdiction over their counterclaims. However, the fact that RTC has instituted the present action against defendants seeking relief similar to that which OTS has threatened to pursue against them does not provide a basis for this court's exercising jurisdiction of which Congress has explicitly divested it. Moreover, the RTC and OTS are separate governmental entities which perform separate, though related, functions. RTC is authorized to proceed against these defendants in this proceeding in furtherance of its receivership functions as the manager of assets of the failed bank. It does not have enforcement powers, which have instead been bestowed

on OTS under FIRREA. As one court has explained:

> "[T]he authority over assets conferred on RTC in section 1441(a)(b)(3)(A), however broad, is not commensurate with an express grant of enforcement power, and cannot be so construed....

> . . . . .

In summary, FIRREA designates RTC as the manager of the assets of failed or failing thrifts. It is OTS, however, which polices the banking regulations. OTS has specific authority to issue both cease-and-desist and removal orders, and possesses other enforcement powers as well. OTS is specifically authorized, for example, to pursue restitution for violations of banking regulations, and to enjoin institution-affiliated parties from engaging in conduct with respect to any savings and loan.

*In re American Continental Corporation/Lincoln Sav. & Loan Sec. Litig.,* 779 F.Supp. 1053, 1056 (D.Ariz.1991). In *Continental Corporation,* former officers and directors of a failed thrift moved for injunctive relief against an administrative proceeding in progress pursuant to a notice of charges filed by OTS, in part because the RTC was contemporaneously pursuing causes of action against those officers and directors in district court for alleged violations of the Racketeer Influenced and Corrupt Organizations Act. The court noted the distinct nature of RTC and OTS vis-a-vis their establishment, functions and authority, and concluded that § 1818(i) precluded the court's granting the injunctive relief sought by the defendants. In doing so, the court made the following observation:

> The Court is concerned that the OTS administrative proceeding may be redundant in important practical respects with an effort well underway by its sister federal agency, and questions whether the return on the investment of additional resources will be sufficient to justify the expenditure of those resources in the public interest. Nevertheless, the Court

finds that the statutory authority under which OTS proceeds is clear.

*Continental Corp.,* 779 F.Supp. at 1056. The analysis of that court applies with equal force in the case *sub judice.*

While the court concedes the possibility urged by defendants, that possibility is a by-product of the statutory scheme established by Congress, and in particular the division of authority and responsibility between OTS and RTC. The court simply lacks the power to alleviate defendants' concern by granting the declaratory relief which they seek. In a related context, the court in *Greenberg, supra,* observed:

> Although on occasion this court has directed that the doctrine of res judicata be applied in an administrative proceeding without waiting until a final order was ready for review, ... the circumstances of the instant case require adherence to the normal requirement of exhaustion of administrative procedures. That is the obvious import of section 1818(i)(1).... The exhaustion doctrine counsels us to allow the OCC to make the necessary factual record and to correct its own errors before we pass on the merits of

appellants' claims. *See Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 817–18, 31 L.Ed.2d 17 (1972); *McKart v. United States,* 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969). Unless an agency is exceeding its jurisdiction, courts ordinarily do not interfere before the agency has completed its task. *McKart, supra,* 395 U.S. at 194, 89 S.Ct. at 1662–63.

*Greenberg,* 938 F.2d at 11–12.

Based on the foregoing, the court concludes that the motion of OTS for dismissal should be granted.[11] This court is quite plainly without jurisdiction over any of the claims asserted against OTS.[12]

## COUNTERCLAIMS AGAINST RTC

RTC urges that this court lacks subject matter jurisdiction to hear any of the claims asserted by defendants against it in its capacity as receiver of Peoples Bank because defendants have failed to exhaust the administrative procedures established by FIRREA for asserting claims, as set forth at 12 U.S.C. § 1821(d).[13] As in the case of OTS, FIRREA provides an administrative scheme for adjudicating claims against failed institutions for which the

---

**11.** OTS concedes that should it initiate administrative enforcement proceedings against defendants, or any of them, which culminates in an award of restitution, the defendants would be entitled to an offset against any amounts awarded to RTC in this action.

**12.** The court would observe that the Fifth Circuit in *Groos* was faced with an allegation by the plaintiff, similar to that advanced by defendants in connection with their claim for declaratory relief with respect to the December 20, 1989 letter, that a certain agreement between him, the Comptroller and the bank was invalid because it lacked consideration and that consequently no enforcement action should proceed on the basis of that agreement. The *Groos* court quickly dispensed with the claim, explaining:

> The statute (section 1818) provides that a cease and desist order may issue upon any violation of an agreement between the agency and a bank and says nothing of consideration. Nor is there any reason to import the common law of consideration, proper to private contractual relations, into the relationship between a regulatory agency and the entity it regulates. The Comptroller is authorized by statute to exercise extensive controls upon banks; the statute clearly contemplates that agreements may occur between the Comptrol-

> ler and banks; and if the Comptroller does enter such an agreement by way of attaining voluntary compliance, we will not introduce the trappings of common-law contractual consideration to question that agreement. To do so would deeply intrude upon the regulatory agency's legitimate efforts to substitute voluntary agreement for formal cease and desist proceedings.

*Groos,* 573 F.2d at 896. The court noted that "the bank was free to argue the invalidity of the ... agreement in the course of the regulatory proceedings...." Thus, *Groos* makes clear that this court is ill-suited to address the declaratory relief sought by defendants relating to the December 20, 1989 letter. Like the plaintiff in *Groos,* there is nothing to preclude these defendants from asserting in any administrative proceedings which the OTS might choose to initiate that the letter from which they seek relief is not a binding obligation such that it cannot form the basis of an enforcement order.

**13.** 12 U.S.C. § 1441a(b)(4) (West Supp.1991), another section of FIRREA, grants to RTC the same powers and rights to carry out its duties with respect to insured depository institutions as the FDIC has under Sections 11, 12 and 13 of the Federal Deposit Insurance Act, as amended, 12 U.S.C. § 1821, 1822 and 1823 (West 1989).

RTC has become receiver. Under the scheme established by FIRREA, RTC, as receiver of failed thrifts, is granted the authority to determine claims in accordance with the administrative procedures set forth in the statute, including the power to disallow "any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of" RTC. *See* 12 U.S.C. 1821(d)(5)(D). RTC must act on the claim within six months, and, if the claim is disallowed, the claimant may either seek an administrative review of that decision, or file "a suit on such claim" in federal district court, 12 U.S.C. § 1821(d)(6), which will provide *de novo* review of the claim. Included in this administrative procedures framework is § 1821(d)(13)(D), which puts in place a bar to district court jurisdiction in the following terms:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

The question for resolution is whether defendants' counterclaims against RTC are "claims" within the meaning of § 1821(d)(13)(D) since all claims which do fall within the purview of that section must be presented to RTC through the administrative claims procedures before they may be pursued within the jurisdiction of the federal courts. *See Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 882 (5th Cir.1992) ("Although FIRREA does not explicitly mandate exhaustion of administrative remedies before judicial intervention, the language of the statute and indicated congressional intent make clear that such is required."); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391–92 (3d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991) (statute "provides for *de novo* district court jurisdiction only after the filing of a claim with, and the initial processing of that claim by, RTC"); *Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 132 (3d Cir.1991) (in enacting FIRREA, "Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in 1821"); *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 (2d Cir.1991) ("the statute means just what it says, and, accordingly, ... a claimant must first present its case to the RTC under the administrative procedure erected by FIRREA before seeking relief in the federal courts"); *Circle Indus., Div. of Nastasi–White, Inc. v. City Fed. Sav. Bank,* 749 F.Supp. 447, 455 (E.D.N.Y.1990), *aff'd,* 931 F.2d 7 (2d Cir. 1991) ("In enacting FIRREA, Congress intended litigants like Circle Industries to first submit their claims against failed savings and loan institutions to the RTC or FDIC before commencing an action in the district court."); *Federal Deposit Ins. Corp. v. Glynn,* No. 91 C 3726, 1992 U.S.Dist. LEXIS 8619, at *14–15 (N.D.Ill. June 17, 1992) ("where a claimant has been properly notified of the appointment of a federal insurer as receiver ... and has nonetheless failed to initiate an administrative claim within the filing period, ... the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court"); *Shelton,* 789 F.Supp. at 1370 ("Congressional intent to remove the federal courts from the initial consideration of these claims is clearly set forth in 12 U.S.C. § 1821(d) which provides for *de novo* district court jurisdiction *only after* the filing of a claim with, and the processing of that claim by, the FDIC."); *United States v. Altman,* 762 F.Supp. 139, 143 (S.D.Miss.1991) (courts have uniformly held that compliance with the administrative procedures established by FIRREA is mandatory and the statutory procedures must be exhausted before a federal district court has jurisdiction to hear a claims controversy); *Hermitage Assoc. v. Resolution Trust Corp.,* No. CV–91–2027, 1991 WL 281737, at *1 1991 U.S.Dist. LEXIS 15507,

at \*3 (E.D.N.Y. Oct. 9, 1991) (§ 1821 provides "only route that a claimant can take to the federal judiciary" since the "statutory arrangement divests Article III courts of subject matter jurisdiction over such claims until the claimant has sought agency redress"); *Rexam Ltd. v. Resolution Trust Corp.*, 754 F.Supp. 245, 246 (D.P.R. 1990) (contract claim commenced prior to appointment of receiver could be continued only after exhaustion of RTC's administrative remedies).

### Defendant's Claims for Declaratory Relief Against RTC

■ As in the case of the OTS, defendants seek by count 1 of their counterclaim a declaratory judgment against RTC that the letter of December 20, 1989, referenced *supra*, from the Peoples Bank directors to OTS, created no enforceable obligation in favor of RTC.[14] In count 2, defendants demand a declaratory judgment that they acted properly at all times in the performance of their duties as officers and directors of Peoples Bank and thus have incurred no liability to RTC or any other entity for any of their actions. In *Rosa v. Resolution Trust Corp.*, the court undertook to define the claims for which the administrative claims procedure is mandated:

> [T]he bar embodied in clause (i) reaches (1) claims for payment from the assets of [the failed institution], (2) actions for payment from those assets and (3) actions for a determination of rights with respect to those assets.

*Rosa*, 938 F.2d at 393; *see also Glynn*, LEXIS 8619, at \*16 ("The jurisdiction bar of section (d)(13)(D) reaches all claims seeking payment from the assets of the affected institution, all suits seeking satisfaction from those assets and all actions for the determination of rights vis-a-vis those assets."). As the court perceives their claims, defendants do not seek by either count 1 or 2 of their counterclaim payment from the assets of Peoples Bank, nor are these claims for a determination of rights with respect to any asset of the institution.

Moreover, defendants do not request in either of these counts any monetary or affirmative relief of any kind. Rather, defendants are pursuing a declaratory judgment concerning their personal liability to RTC. Defendants' request for an adjudication that they committed no wrongful acts in their capacities as officers and directors of the Bank is, in essence, nothing more than a denial of RTC's right to the declaratory relief which it seeks. That is, the counterclaim is strictly defensive in nature and, in view of the nature of their claim and its relationship to the claim asserted against defendants by RTC, the court concludes that dismissal is not mandated by § 1818(d)(13)(D).

■ The court is, of course, cognizant that claims against officers an directors for wrongdoing in connection with bank activities constitute an asset of the Bank. *See Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir.1979) ("As a general rule, wrongdoing by bank officers that adversely affects all depositors creates a liability which is an asset of the bank, and only the bank or its receiver may sue for its recovery."); *Federal Deposit Ins. Corp. v. Stanley*, 770 F.Supp. 1281, 1286 (N.D.Ind.1991) ("Among the assets purchased by the FDIC in its corporate capacity were all claims against directors, officers, or employees of the bank arising out of any act or acts of any such persons in respect to the Bank or its property, by virtue of the non-performance or manner of performance of their duties."); *In re Sunrise Sec. Litig.*, 108 B.R. 471 (Bankr.E.D.Pa.1989), *aff'd*, 916 F.2d 874 (3d Cir.1990) (same); *In re Longhorn Sec. Litig.*, 573 F.Supp. 255, 272 (W.D.Okla.1983) (same); *Brandenburg v. Seidel*, 859 F.2d 1179, 1191 (4th Cir.1988) (any action against bank's officers belonged to receiver and "the damages recoverable in such an action are assets of the institution itself, to be equitably distributed among all its creditors ..."). Because this is so, one court has concluded that the jurisdictional exclusions of § 1818(d)(13)(D) were triggered by affirmative defenses which were asserted by former bank offi-

**14.** *See supra* n. 8.

cers and directors in an action brought against them by FDIC, as receiver, since, in that court's view, the affirmative defenses sought a "determination of rights with respect" to the failed bank. *Federal Sav. and Loan Ins. Corp. v. Shelton,* 789 F.Supp. 1367, 1371 (M.D.La.1992). In *Shelton,* however, as distinguished from the case at bar, the defendants were attempting by their affirmative defense, which alleged a failure of the receiver to mitigate damages, to decrease the amount of their liability for damages to the bank. The court opined: "Whether raised by affirmative defense or counterclaim, any set off caused by the FDIC's failure to maximize or liquidate collateral will affect the failed bank's rights and assets. Thus, such a claim must first be presented to the agency before the Court has subject matter jurisdiction to consider the claim." *Id.* 789 F.Supp. at 1371. The court further stated: "Since the claim seeks to diminish the recovery of the FDIC and thereby would decrease Sun Belt's assets, the claim seeks affirmative relief which this Court is without jurisdiction to entertain under 12 U.S.C. § 1821(d)(13)(D)." *Id.* at 1372.

Defendants' position in the case at bar, unlike that of the defendants in *Shelton,* is not that RTC is responsible in part for any damages the Bank has sustained, but rather is simply that these defendants did not cause any damage to the Bank by any wrongful acts. Moreover, while defendants in the case *sub judice* do seek to establish that they are not liable to RTC and if successful in doing so would not merely diminish but would in fact defeat any recovery by RTC, that would be the case whether defendants were proceeding in this cause solely in defense of RTC's allegations or whether they were also pursuing their putative counterclaim for declaratory judgment. That is because their defense and their declaratory judgment claim are substantively the same, i.e., a denial that they committed any wrong or breached any agreement which would entitle RTC to recover against them. Therefore, if RTC failed to prove its claim against defendants, it would not recover against them; but that result would enure irrespective of whether this court assumed jurisdiction over defendants' counterclaim.[15]

Although the court does not consider § 1821(d)(13)(D) to divest it of jurisdiction over the counterclaims by defendants, the court does find that such claims are not proper declaratory judgment claims. Because defendants' claims for declaratory simply seek an adjudication that they have not violated their duties as officers and directors of Peoples Bank as alleged by RTC, there is identity of factual and legal issues between RTC's claims against defendants. Thus, the declaratory judgment claims of RTC renders the defendants counterclaims for declaratory judgment redundant and moot upon disposition of the claims against defendants. *See Aldens, Inc. v. Packel,* 524 F.2d 38, 51–52 (3d Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). Accordingly, RTC's motion, as it pertains to defendants' claims for declaratory relief, will be granted.[16]

---

**15.** The only possible basis for concluding that the counterclaim asserted by Ryan, as contrasted with the other defendants, is a claim to an asset of the bank, or a claim for a determination of rights with respect to an asset of the Bank, is the fact that retirement funds which were to have been delivered to Ryan have been frozen to be utilized by RTC in satisfaction of any judgment which it might obtain against Ryan. In the court's opinion, this circumstance does not transform the character of Ryan's claim such as would bar this court from exercising jurisdiction since the retirement funds are not an "asset" of the Bank, but rather remain the property of Ryan until such time as RTC should secure a judgment against Ryan. At this time, those funds are merely a means by which RTC may eventually recover on a potential judgment against Ryan. Moreover, as explained in the text, if Ryan were to prevail on his counterclaim, RTC would not be entitled to realize upon the retirement funds that have been frozen in anticipation of the recovery of a judgment against Ryan. However, there would be the same result if RTC failed on its claim, regardless of whether Ryan has asserted this counterclaim against it.

**16.** The court would note that the claim for declaratory judgment as to the effect of the December 20, 1989 letter does not appear to present a "case or controversy" in any event, as there is nothing in the complaint filed by RTC to suggest that RTC's action is predicated upon

### Ryan's Claim for Money Damages Against RTC

Ryan alleges in count 4 of his counterclaim against RTC a cause of action for money damages based on his allegation that RTC converted a check representing Ryan's vested retirement funds.[17] The court is of the opinion that as to this claim, RTC's motion is well taken and should be granted. The claim, by which Ryan seeks entitlement to a money judgment against RTC for the alleged conversion of his retirement funds, is clearly a claim "relating to any act or omission" of RTC as receiver, and falls squarely within the exhaustion mandate of § 1821(d)(13)(D)(ii).

Though the bar of § 1821(d)(13)(D)(ii) appears plainly applicable, Ryan urges that the section does not apply to his money damage claim because the claim seeks payment from RTC under the Federal Tort Claims Act, not from the Bank, and does not relate to any act or omission of the Bank or RTC as receiver. More specifically, Ryan argues, "[t]he Bank, of course, did nothing at all, and the job of RTC, either as receiver or conservator, is to collect and preserve the Bank's assets, not to convert Ryan's." In the court's view, irrespective of Ryan's characterization of his claim, it is evident that the claim does, in fact, relate to the RTC's acts as receiver. He claims that the RTC converted the check representing Ryan's individual retirement account. The record demonstrates beyond question that RTC dealt with Ryan's retirement check in its capacity as receiver of the Bank. Indeed, the actions ultimately taken by RTC with respect to the check, i.e., the filing of the application with this court to have that check placed in an escrow account and have a trustee appointed, were taken in accordance with the authority granted it under FIRREA as the receiver of Peoples Bank.[18] The specific statutory provision under which that application was filed is included under the heading "Powers and duties of Corporation *as conservator or receiver.*" (emphasis supplied). It can hardly be reasonably contended that the seizure of the check was by the RTC is a capacity other than that of receiver.

any such alleged letter or agreement. The existence of a "case or controversy" is clearly a prerequisite to an action brought under the Declaratory Judgment Act.

**17.** Ryan's allegations of the facts upon which this claim is based are set forth in the counter-complaint as follows:

On or about July 19, 1991, Deposit Guaranty National Bank in its capacity as trustee for the Peoples Federal Retirement Fund, mailed to Ryan, c/o Peoples Federal, a check in the amount of $74,013.71 payable to Ryan. This check represented a distribution of Ryan's interest in the Peoples Federal Retirement Fund.

Upon information and belief, Ryan's check was received at Peoples Federal whereupon the envelope containing the check, although addressed to Ryan, was opened and the check seized by RTC.

Ryan made several inquiries regarding the status of his check and was advised that RTC had instructed that the check be held and not delivered to him.

By correspondence dated August 1, 1991, Ryan's attorney informed Ms. Carolyn Perry of RTC that Ryan's check was being wrongfully withheld and demanded immediate return of the check to its rightful owner, Ryan.

By letter dated August 5, 1991, RTC refused to tender Ryan's check as requested and instead suggested that the check be deposited into an escrow account to be jointly held by Ryan's representative and RTC. Upon receipt of the RTC response, Ryan, through his attorneys, rejected the RTC proposal and again demanded prompt delivery of the check.

RTC continued to wrongfully hold Ryan's check until August 16, 1991, at which time the check was delivered to Ryan's attorneys. Contemporaneously with delivery of the check, Ryan was informed of the pending Application for Order by RTC. That same afternoon Ryan deposited the check in an individual retirement account at Deposit Guaranty National Bank.

**18.** On August 16, 1991, RTC filed an application for order pursuant to 12 U.S.C. § 1821(d)(18) and (19) seeking a temporary restraining order and preliminary injunction to preserve certain retirement benefits paid to Ryan pending the resolution of potential claims of RTC against Ryan. The cited section is part of the Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990, which in effect, supplemented FIRREA by allowing RTC to request certain injunctive relief, including an asset freeze under the administration of a court-appointed trustee.

No hearing was conducted on RTC's application, as the parties consented to the entry of injunctive relief against the retirement fund proceeds.

By his denial that RTC, as receiver, or the Bank converted his retirement account, Ryan apparently suggests that his conversion claim is intended to be asserted against RTC in its corporate capacity. As in the case of the FDIC, the RTC acts in both receiver and corporate roles, and these roles are distinct; in the former capacity the RTC is obligated to marshal the assets of a failed savings institution for the benefit of the bank's creditors and shareholders, whereas in its corporate capacity the RTC acts as an overseer of insured depository institutions. *See Landy v. Federal Deposit Ins. Corp.* 486 F.2d 139 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); *Federal Deposit Ins. Corp. v. Ashley,* 585 F.2d 157 (6th Cir.1978). It is clear that the jurisdiction bar of § 1821(d)(13)(D) does not apply to RTC in its corporate capacity, *see Rosa,* 938 F.2d at 393, and there has been no suggestion that this tort claim, were it brought against RTC in its corporate capacity, would be subjected to exhaustion requirements under the Federal Tort Claims Act. It is equally clear, however, that RTC corporate did not commit the acts complained of by Ryan. Moreover, RTC corporate is not the party which brought this action and is thus not a defendant to the counterclaim asserted by Ryan. Rather, the party which brought this action and which is the defendant as to Ryan's counterclaim is RTC Receiver. *See Resolution Trust Corp. v. Plumlee,* 745 F.Supp. 1462 (E.D.Ark.1990) (where RTC was suing in capacity as conservator and not in its corporate capacity, borrower could not maintain defamation counterclaim against RTC in its corporate capacity); *Federal Deposit Ins. Corp. v. Corning Sav. & Loan Ass'n,* 696 F.Supp. 1245 (E.D.Ark. 1988) (counterclaims against FDIC as receiver may not be sustained in action brought by FDIC in its corporate capacity); *Federal Deposit Ins. Corp. v. Vogel,* 437 F.Supp. 660 (E.D.Wis.1977) ("Any action arising out of a breach of contract by [an insolvent bank] must be alleged against the bank's receiver, not against the plaintiff [FDIC corporate] herein."). RTC's motion as it pertains to count 4 of Ryan's counterclaim will be granted.

## CONCLUSION

Based on the foregoing, it is ordered that the motions of RTC and OTS to dismiss are granted and the counterclaims asserted against them by defendants dismissed.