**FIRST NATIONAL BANK OF CHICAGO,**
**as Trustee of the Institutional Real Es-**
**tate Fund F, Petitioner,**

v.

**Stephen R. STEINBRINK, Acting Comp-**
**troller of the Office of the Comptroller**
**of the Currency of the United States,**
**and the Office of the Comptroller of the**
**Currency of the United States, an agen-**
**cy of the United States, Respondents.**

No. 92 C 4053.

United States District Court,
N.D. Illinois, E.D.

Feb. 9, 1993.

Harold C. Hirshman, Stuart Altschuler, Sonnenschein, Nath & Rosenthal, Chicago, IL, for petitioner.

Eileen M. Marutzky, U.S. Attorney's Office, Chicago, IL, for respondents.

William Edmund Kenny, Pretzel & Stouffer, Chtd., Chicago, IL, for intervenor Illinois Mun. Retirement Fund.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

First National Bank of Chicago ("Bank"), as Trustee of the Institutional Real Estate Investment Fund F ("Fund F"), has petitioned this court to review a "letter ruling" issued on May 7, 1992, by Jimmy F. Barton, Deputy Comptroller, Multinational Banking. Specifically, the Bank seeks a declaratory judgment as to the propriety of the May 7 letter and the proper calculation of Fund F participants' matured redemption requests. Stephen R. Steinbrink, Acting Comptroller, and the Office of the Comptroller of the Currency of the United States ("OCC") move this Court to dismiss the petition for lack of subject matter jurisdiction. For the reasons set forth below, OCC's motion to dismiss is granted.

The Comptroller has initiated administrative proceedings pursuant to 12 U.S.C. § 1818(b)(1). On May 5, the Comptroller filed a Notice of Charges, which was subsequently amended, requesting that a cease and desist order be issued against the Bank for violations of 12 C.F.R. §§ 9.18, 92a and Part 9 in its administration of Fund F participants' withdrawal requests. The Comptroller seeks additional relief in the form of an order directing the Bank to make up any shortfall in the Fund attributable to the Bank's violations and the resulting delay in payment of matured withdrawal requests.

■■■ Once such an administrative enforcement proceeding is initiated, a district court's jurisdiction is defined by section 1818(i) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. Section 1818 states:

> [E]xcept as provided in this section no court shall have jurisdiction to **affect** by injunction or **otherwise the issuance** or enforcement or any notice or order under this section, **or to review,** modify, suspend, terminate, or set aside any such order.

12 U.S.C. § 1818(i)(1) (1988) (emphasis added). Despite this general withdrawal of jurisdiction, a district court can: (1) set aside, limit, or suspend temporary cease and desist and suspension orders issued pending completion of the administrative proceedings if petitioned within 10 days of service of the order;[1] (2) enforce temporary cease and desist orders issued when violations of such orders are threatened;[2] and (3) enforce outstanding notices and orders such as subpoenas in connection with proceedings, examinations, and investigations initiated by OCC.[3] Judicial review of final orders, however, falls strictly within the province of the "court of appeals for the circuit in which the home office of the

---

1. 12 U.S.C. § 1818(c)(2) & (f) (1988).

2. 12 U.S.C. § 1818(d) & (i)(1) (1988).

3. 12 U.S.C. § 1818(n) & (i)(1) (1988).

depository institution is located, or in the United States Court of Appeals for the District of Columbia Circuit." 12 U.S.C. § 1818(h)(2) (1988).

■ The clear import of these provisions in § 1818 is to effectuate an exacting administrative mechanism "through which the Comptroller may curtail unsafe banking practices or legal violations through cease and desist orders that are reviewable in the circuit courts and, where necessary, may provide interim security through temporary orders that may be challenged or enforced through the district courts." *Groos Nat'l Bank v. Comptroller*, 573 F.2d 889, 894 (5th Cir.1978). Moreover, section 1818 provides the exclusive mechanism for proceedings brought under this section. " '[T]he clarity of the congressional preclusion of review' in § 1818(i)(1), coupled with the 'meaningful and adequate opportunity for judicial review' by the court of appeals following a final administrative order, provide[s] 'clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the [ ] ongoing administrative proceedings.' " *Resolution Trust Corp. v. Ryan*, 801 F.Supp. 1545, 1550 (S.D.Miss.1992) (quoting *Board of Governors of Fed. Reserve System v. MCorp Fin., Inc.*, —— U.S. ——, ——, 112 S.Ct. 459, 466, 116 L.Ed.2d 358 (1991)).

To date, no temporary cease and desist order has issued, and the hearing originally scheduled has been held in abeyance. Accordingly, none of the three exceptions to the withdrawal of jurisdiction from the district court has been triggered. The Bank, however, asserts two additional bases for this Court's jurisdiction over its petition for review. First, the Bank argues that a letter written by the Deputy Comptroller to the CEO of the Bank on May 7, 1992, after the OCC filed the Notice of Charges, constitutes an "independent letter ruling ripe for judicial review." Second, the Bank argues that this Court can review the May 7 letter under the *Leedom v. Kyne* exception to § 1818(i) withdrawal statute. *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).

■ This Court "is not bound to accept as true the allegations of the complaint which tend to establish jurisdiction where a party properly raises a factual question concerning the jurisdiction of the district court to proceed with the action." *Grafon Corp. v. Hauserman*, 602 F.2d 781, 783 (7th Cir.1979). The allegations in the complaint must be considered in conjunction with all other evidence submitted on the issue of subject matter jurisdiction. *Id.* Furthermore, any conflict in the evidence submitted must be viewed in light of the fact that the party invoking jurisdiction carries the ultimate burden of presenting "competent [factual] proof" of proper subject matter jurisdiction. *Id.*

■ With respect to the independent letter ruling argument, the issue before this Court is not whether the May 7 letter constitutes a "ruling," but whether the letter constitutes a "final agency action." The letter qualifies as a final agency action if it: (1) contains definitive statements as opposed to tentative or informal statements or a ruling by a subordinate official; (2) affords sanctions or penalties for noncompliance; (3) has a direct and immediate impact on the petitioners' day-to-day business; and (4) requires immediate compliance such that petitioner is faced with choosing between costly compliance and sanctions for noncompliance. *Abbott Labs. v. Gardner*, 387 U.S. 136, 151–53, 87 S.Ct. 1507, 1517–18, 18 L.Ed.2d 681 (1967).

The Bank argues that the May 7 letter is a final agency action because its "definitive" rejection of the Bank's proposed April 30 distribution plan prevented administration of the Fund. The parties essentially argue over semantics. The critical fact weighing in favor of the Bank's interpretation is that the letter withholds permission to proceed with its distribution plan and simultaneously requests that the Bank's CEO acknowledge in writing its intent to comply with the OCC's interpretation of its regulations. The Seventh Circuit held that this Court properly exercised jurisdiction over the Bank's first petition for review because (1) the July 17, 1990 letter refused permission, not advice, to "embark[ ] on a

controversial course of action" (2) "with no practical opportunity to obtain judicial interpretation of the regulation ... [requiring the Bank] to fold its tent in the face of the Comptroller's disapproval." *First Nat'l Bank of Chicago v. Comptroller*, 956 F.2d 1360, 1364–65 (7th Cir.1992) (*"First Nat'l I"*).

 *First Nat'l I*, however, does not conclusively render the May 7 letter, in this case, a final agency action and, consequently, does not automatically establish subject matter jurisdiction over the Bank's second petition. The Bank's second petition and the circumstances surrounding its filing are fundamentally different from the first petition. First, the Deputy Comptroller sent the May 7 letter after the commencement of administrative enforcement proceedings and discussed one of the issues specifically pending in those proceedings. Once administrative proceedings have commenced for a cease and desist order under § 1818(b)(1), the district court's jurisdiction is governed by the limitations imposed by the statute. Second, although the OCC requests stringent compliance with the May 7 letter, the "definitive" nature of the OCC's position is diminished by the Deputy Comptroller's repeated reference to the letter as a "guide" intended to respond to the Bank's proposed distribution plan and to "reiterate [the OCC's] understanding as to how distribution of the Fund's assets should be administered." Third, the Bank's failure to identify any sanctions or penalties threatened for noncompliance with the Deputy Comptroller's requests undermines the Bank's suggestion that it must "fold its tent" in response to the Comptroller's disapproval.[4] The letter precludes neither implementation of the April 30 plan nor submission of an alternate distribution plan for consideration by the OCC.

In fact, the Bank's written status report filed on January 8, 1993, reveals that the Bank submitted an alternate plan to the OCC and undertook to make an interim distribution of fractional interests in real estate on January 15, 1993, to Fund F participants with matured redemption requests.[5] For the same reasons it was wrong to challenge the May 7 letter here, the Bank was right to ignore the May 7 letter. For all practical purposes, it was nothing more than a piece of paper. The Deputy Comptroller merely employed a threatening tactic often seen in private litigation, which ordinarily should be beneath the dignity of the government. The letter was artfully crafted to intimidate a regulated bank into doing something which the OCC was unwilling to order, and it is not surprising that the OCC was unwilling to order such action. The OCC's position in the May 7 letter is based on flawed economics and ignores that the nature, worth, and marketability of fractional interests in property is fundamentally different from investment property owned in whole. Had the Bank distributed fractional interests in trust properties on the one-year maturity date, the withdrawing Fund F participants would still have fractional interests whose values are dictated by today's depressed real estate market.

 Finally, even if the May 7 letter is considered a final agency action, judicial review still remains with the U.S. Court of Appeals in the Seventh Circuit or District of Columbia Circuit because the action is an integral part of the administrative proceedings. The Administrative Procedure Act does not expand this Court's jurisdictional limits in this case. This Court can review final agency actions under the Administrative Procedure Act only if "there is no other adequate remedy in a court." 5 U.S.C. § 704 (1988); *see MCorp*, —— U.S. at ——, 112 S.Ct. at 465 ("[T]he specific pre-

---

**4.** Other than those presented by the commencement of an administrative enforcement proceeding, the letter imposed no additional sanctions or penalties for noncompliance with the Deputy Comptroller's request for either a signed acknowledgement or conforming action. The May 7 letter is also unlike the July 17 letter in that it does not implicate the waiver of any regulation, only its interpretation.

**5.** The OCC has neither approved nor rejected this alternate plan, alleging that it lacks sufficient information to determine its propriety.

clusive language in 12 U.S.C. § 1818(i)(1) ... is not qualified or superseded by the general provisions governing bankruptcy proceedings.").

■■■ Clearly, an adequate remedy exists in this case. Not only is an administrative proceeding pending which addresses the very same issues set forth in the Bank's petition,[6] but a viable opportunity for review exists in the appellate courts once a final enforcement order is issued.[7] The only inadequacy with this remedy is that the Bank must endure the added expense and inconvenience of final adjudication in the administrative proceedings and subsequent review in the Seventh Circuit. "While this expense and inconvenience may be substantial, 'litigation expense and attendant inconvenience do not constitute irreparable injury sufficient to justify judicial intervention into pending agency proceedings.'" *Abercrombie v. Comptroller*, 833 F.2d 672, 677 (7th Cir.1987) (citing *Rosenthal & Co. v. Commodity Futures Trading Comm'n*, 614 F.2d 1121, 1128 (7th Cir.1980)). Accordingly, the Bank cannot hang its hat on a final agency action as the basis for subject matter jurisdiction.

■■■ The Bank's final ground for subject matter jurisdiction lies in its interpretation of the judicially-created exception to § 1818(i) withdrawal statute. Section 1818(i) "evinces a clear intention that this regulatory process is not to be disturbed by untimely judicial intervention, [unless] there is [a] 'clear departure from statutory authority.'" *Groos*, 573 F.2d at 895 (citation omitted); *see also Federal Deposit Ins. Corp. v. Bank of Coushatta*, 930 F.2d 1122, 1126 (5th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 170, 116 L.Ed.2d 134 (1991); *Greenberg v. Comptroller*, 938 F.2d 8 (2d Cir.1991). The Bank claims that the OCC clearly departed from statutory authority pronounced in § 1818(c)(1) by sending the

May 7 letter instead of issuing a temporary cease and desist order. However, the "statutory authority" exception to normal exhaustion of administrative remedies is a "narrow anomaly reserved for extreme situations." *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir.1981). It authorizes review by the district court only upon a showing of " 'blatantly lawless' action—in circumstances where no adequate alternative judicial remedy exists for the unlawful activity's victims." *Abercrombie*, 833 F.2d at 675.

■■■ This Court cannot exercise jurisdiction under the "statutory exception" to § 1818(i). First, the Bank has failed to allege sufficient facts evidencing that the OCC acted "in excess of its delegated powers contrary to a specific prohibition in the Act." *First Nat'l Bank v. C.T. Conover*, 715 F.2d 234 (6th Cir.1983) (district court lacked jurisdiction over bank's suit for injunctive relief to prevent suspension of two officers by Comptroller). The Comptroller neither sent nor claims to have sent the May 7 letter under the false pretense of a temporary cease and desist order and, therefore, was not bound by procedures under § 1818(c). Instead, the Comptroller claims to have sent the letter pursuant to its authority to engage in informal negotiations with the Bank during the pendency of the administrative proceedings. The Bank has failed to isolate a provision specifically prohibiting such efforts to avoid further enforcement proceedings. The Bank also has failed to allege any fact showing that the OCC's decision to proceed in this manner was manifestly improper. *See American Land Title Assoc. v. Clarke*, 743 F.Supp. 491, 494 (W.D.Tex.1989) (advisory letters are not reviewable). Finally, an adequate legal remedy still exists in both the pending administrative proceeding and judicial review in the Seventh Circuit, which

---

**6.** The Amended Notice charges the Bank with improper conduct in not calculating the distribution according to the value of the withdrawing participant's proportionate interest in Fund F on the date the withdrawal requests matured. Amended Notice of Charges, Art. III(4). In a letter dated November 24, 1992, Jimmy F. Barton, the Deputy Comptroller, reaffirmed the OCC's intent to "continue litigating the Amended Notice of Charges for the issuance of a Cease

and Desist Order against The First National Bank of Chicago."

**7.** The availability of a "practical opportunity to obtain a judicial interpretation of the regulation" in the administrative proceedings also militates against finding a final agency action. *First Nat'l Bank of Chicago v. Comptroller*, 956 F.2d 1360, 1365 (7th Cir.1992).

likewise precludes application of this narrow exception.

Congress has fashioned a regulatory framework which divests this Court of jurisdiction over the Bank's petition for review. In addition to the reasons stated above, this Court cannot exercise jurisdiction where the clear result of granting the relief sought in the Bank's petition would be to affect otherwise the issuance or enforcement of any administrative order [8] and to "circumvent[ ] the administrative machinery put in place by § 1818 to permit the appropriate regulatory agency—[ ] the Comptroller of the Currency—to proceed with enforcement actions." *Resolution,* 801 F.Supp. at 1550; *see Somerfield v. Federal Deposit Ins. Corp.,* 609 F.Supp. 128 (D.C.Tenn.1985) (court lacked jurisdiction under § 1818(i) to review notice of removal of CEO; fact questions were "properly resolved in the administrative proceedings").[9] The OCC's motion to dismiss for lack of subject matter jurisdiction is granted. The Bank's motion for summary judgment is denied as moot.

**8.** 12 U.S.C. § 1818(i)(1) (1988).

**9.** This withdrawal of jurisdiction remains the same regardless of the form of relief sought. *Groos,* 573 F.2d at 895 (removal of jurisdiction applies to actions for declaratory judgments as well as injunctions); *Abercrombie,* 833 F.2d at 674–75 (§ 1818(i)(1) "explicitly and unequivocally withdraws jurisdiction from all other courts 'to affect by injunction or otherwise' CMP assessments [by the Comptroller]").