**FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION, Receiver for Sun Belt Federal Bank, F.S.B.**

v.

**Wendell P. SHELTON, et al.**

**Civ. A. No. 86–393–B.**

United States District Court,
M.D. Louisiana.

March 9, 1992.

John M. Wilson, Frederick W. Bradley, James D. McMichael, Liskow & Lewis, New Orleans, La., for plaintiffs.

Phillip W. Preis, Scott H. Crawford, Preis & Crawford, Baton Rouge, La., for Robert N. Amacker, Jr., Robert B. Holt, Harold Dennis, Reynold Minsky, Bruce Betts.

Franklin Moore, Ray C. Dawson, Mark D. Mese, Baton Rouge, La., for INA.

Ronald Ravikoff, Douglas Roberts, Coral Gables, Fla., for Wendell P. Shelton.

Gregory Odom, McGlinckey, Stafford, Cellini & Lang, New Orleans, La., for Flournoy Guenard.

William A. Hargiss, Monroe, La., for Glenn D. Tanner.

Sam J. D'Amico, D'Amico, Curet & Dampf, Baton Rouge, La., for A. Larry Tullos.

Gerald L. Walter, Jr., Schwab & Walter, Baton Rouge, La., for Howard Kindig.

C. Michael Hill, Juneau, Hill, Judice, Marquet, Hill & Adley, Lafayette, La., for John Martin Marron.

J. Michael Johnson, Galloway, Johnson, Tompkins & Burr, Patricia Stone, co-counsel, New Orleans, La., for Frederick Duplanti.

## RULING ON FDIC'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING AFFIRMATIVE DEFENSES OF CONTRIBUTORY NEGLIGENCE, FAILURE TO MITIGATE DAMAGES AND ESTOPPEL

POLOZOLA, District Judge.

The Federal Deposit Insurance Corporation ("FDIC") as receiver for Sun Belt Federal Bank, F.S.B. ("Sun Belt") has moved for partial summary judgment as to the affirmative defenses of contributory negligence, failure to mitigate damages and estoppel.[1] In response to plaintiff's complaint, the defendants asserted the affirmative defenses set forth above.

Defendants contend their contributory negligence defense is based upon the alleged negligence by federal banking agencies in the examination, regulation and supervision of Sun Belt. Defendants base their affirmative defense of failure to mitigate damages upon alleged negligence of federal banking agencies in their post takeover efforts to recover the unpaid loans made by Sun Belt's directors and officers. The defense of estoppel is urged because some defendants[2] complied with the requests of regulators and reasonably relied on the words, conduct and writing of the federal banking regulators.

Defendants also argue that plaintiff's motion for partial summary judgment is not timely. Specifically, defendants contend that the legal sufficiency of an affirmative defense can only be tested by a motion to strike filed within 20 days after service of the relevant affirmative defenses. This contention is without merit. Indeed, this Court has sanctioned the use of summary judgment to dispose of affirmative defenses.[3] Therefore, the Court finds

1. The Federal Savings and Loan Insurance Corporation ("FSLIC") originally brought this suit against the former directors and officers of the failed Sun Belt Bank, F.S.B. ("Sun Belt"). The Federal Deposit Insurance Corporation ("FDIC") has since replaced the FSLIC as party plaintiff in the matter.

2. Robert N. Amacker, Bruce Betts, Harold Dennis, Robert Holt, Jr., and Reynold Minsky plead the defense as part of the Fourth Defense to the Second Amended Complaint. Estoppel is the Sixth Defense of the Answer of Shelton to the Second Amended Complaint. It is the Fourth Defense of the Answer of both Guenard and Adcock to the Second Amended Complaint.

3. *Koch Industries, Inc. v. United Gas Pipe Line Co.,* 700 F.Supp. 865, 867 (M.D.La.1988). *See also* 10A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2737 (1983).

that plaintiff's motion for partial summary judgment on defendants' affirmative defenses was timely and procedurally proper.

## THE AFFIRMATIVE DEFENSE OF CONTRIBUTORY NEGLIGENCE

■ The examination, regulation, and supervision of banks by federal banking agencies are solely for the purpose of protecting federal deposit insurance funds and not for the purpose of protecting bank management. It is clear that the FDIC owes no duty to manage a bank or to bring to the attention of its officers and directors any wrongdoing during its regulatory activities.[4]

Indeed, the United States Supreme Court has recently held that the actions of federal banking agencies in regulating and supervising banks and thrifts are necessarily "discretionary" functions and are not actionable under the Federal Torts Claims Act.[5] This Court believes a similar analysis should be applied when determining whether an affirmative defense based upon contributory negligence is valid. The defendants in this case are doing the very thing which the Supreme Court found improper in *Gaubert*—attempting to litigate whether the federal banking agencies acted prudently in their regulatory activities involving Sun Belt. The defendants in this case should not be allowed to do indirectly what Gaubert was not permitted to do directly.[6]

Therefore, the Court finds plaintiff's motion for partial summary judgment on the

affirmative defense of contributory negligence arising from the Corporation's pre-receivership activities should be granted.

## THE "NO DUTY" RULE

■ Defendants have plead as an affirmative defense that the plaintiff failed to mitigate damages. There is a split of authority regarding the FDIC's duty to mitigate damages. In Louisiana, three cases decided in the Western District have prohibited former directors from raising the defense of post-receivership negligence.[7] However, a district court in the Eastern District of Louisiana has allowed mitigation as a defense to allow the defendants to rebut "causation" for the bank's failure.[8]

This Court rejected a mitigation defense which asserted that the federal banking agency was allegedly negligent in failing to safeguard collateral in a note collection case filed by the FDIC in *Federal Deposit Ins. Corp. v. Fortenberry*.[9] In *Fortenberry*, this Court relied heavily on *Federal Deposit Ins. Corp. v. Carlson*,[10] which defined the scope of the FDIC's duty in its capacity as receiver. In *Carlson*, a bank director and officer liability action, the defendants argued that the FDIC had negligently failed to mitigate damages. The court found no such duty was owed by federal banking receivers to officers and directors of failed financial institutions. The court stated:

> Defendants must establish that the FDIC as receiver owed a duty to the officers to

---

**4.** *First State Bank of Hudson County v. United States*, 599 F.2d 558 (3rd Cir.1979), cert. den., 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Federal Deposit Ins. Corp. v. Berry*, 659 F.Supp. 1475, 1483–84 (E.D.Tenn.1987).

**5.** *United States v. Gaubert*, —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

**6.** It is worth noting that Shelton does not contest the issue of contributory negligence as it pertains to pre-receivership activities by the FDIC or its predecessors in interest. *See* Shelton's Brief in Opposition to Partial Summary

Judgment as to Defendants' Affirmative Defenses, p. 4.

**7.** *Federal Deposit Ins. Corp. v. Stuart*, 761 F.Supp. 31, 33 (W.D.La.1991); *Federal Deposit Ins. Corp. v. Mijalis*, No. 89–1316–S (W.D.La. March 21, 1991); *FDIC v. Arceneaux*, No. 89–2576, 1990 WL 357532 (W.D.La. Sept. 14, 1990).

**8.** *RTC v. Int'l Ins. Co.*, No. 89–4020 (E.D.La. June 5, 1991).

**9.** 754 F.Supp. 86, 89 (M.D.La.1990).

**10.** 698 F.Supp. 178 (D.Minn.1988).

**1370**

collect bad loans without negligence. The authority cited by plaintiff, and even that cited by defendants, specifically holds that the statutory authority under which the FDIC acts creates no duty of care toward bank officers and directors.[11]

Even assuming for purposes of this motion that the FDIC owed a duty of care to the failed bank and its former officers and directors, the defendants are not entitled to an offset by proving simple negligence by the FDIC in operating the bank. This Court has ruled in a separate opinion that the applicable standard of care for directors and officers is gross negligence.[12] The FDIC, in its capacity as receiver, inherits all of the bank's rights and obligations.[13] The standard of care which the FDIC inherits is the same standard imposed on the directors and officers in carrying out their respective duties. Thus, the defendants' claim that the FDIC was guilty of simple negligence in operating the failed bank does not offset any gross negligence committed by the defendants.

The clear weight of authority holds that federal banking receivers owe "no duty to those institutions or to those whose negligence has brought them to the brink of disaster."[14] This Court joins with the majority of courts which have considered this issue and finds the "failure to mitigate damages" and "estoppel" defenses to be legally insufficient.[15]

## SUBJECT MATTER JURISDICTION OVER CLAIMS ARISING FROM POST–TAKEOVER FDIC ACTIVITY

■ Federal courts are courts of limited jurisdiction and may only hear cases where the court has subject matter jurisdiction. Thus, the Court questions whether it has subject matter jurisdiction to consider the affirmative defenses arising from post-takeover activity.[16] "The United States, as sovereign, 'is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' "[17] In its enactment of FIRREA, Congress provided the FDIC with the initial power and authority to adjudicate claims which pertain to failed financial institutions or the FDIC as receiver. Congressional intent to remove the federal courts from the initial consideration of these claims is clearly set forth in 12 U.S.C. § 1821(d) which provides for *de novo* district court jurisdiction *only after* the filing of a claim with, and the processing of that claim by, the FDIC.

Thus, in determining whether this Court has subject matter jurisdiction over the af-

---

11. 698 F.Supp. at 179.

12. *Federal Sav. and Loan Ins. Corp. v. Shelton,* 789 F.Supp. 1360 (M.D.La.1992).

13. 12 U.S.C. § 1821(d)(2)(A)(i).

14. *Federal Deposit Ins. Corp. v. Crosby,* 774 F.Supp. 584, 586 (W.D.Wash.1991). *See also Federal Deposit Ins. Corp. v. Baker,* 739 F.Supp. 1401, 1404 (C.D.Cal.1990); *Federal Deposit Ins. Corp. v. Eckert Seamans Cherin & Mellott,* 754 F.Supp. 22, 25 (E.D.N.Y.1990) (based on policy against burdening public with losses due to errors in judgment by FSLIC as receiver of failed financial institution, affirmative defense of failure to mitigate damages was stricken); *Federal Sav. and Loan Ins. Corp. v. Roy,* No. JMF–87–1227, 1988 WL 96570 (D.Md. June 28, 1988).

15. *Federal Deposit Ins. Corp. v. Crosby,* 774 F.Supp. 584 (W.D.Wash.1991); *Federal Deposit Ins. Corp. v. Greenwood,* 719 F.Supp. 749

(C.D.Ill.1989); *Federal Sav. and Loan Ins. Corp. v. Burdette,* 718 F.Supp. 649 (E.D.Tenn.1989).

16. It is well established "that whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action." Fed. R.Civ.P. 12(h)(3); *Sarmiento v. Texas Board of Veterinary Medical Examiners By and Through Avery,* 939 F.2d 1242, 1245 (5th Cir.1991).

Inherent in the idea that federal courts are courts of limited jurisdiction is the notion that the issue of the Court's subject matter jurisdiction may be raised by the court *sua sponte. Ziegler v. Champion Mortg. Co.,* 913 F.2d 228, 229 (5th Cir.1990).

17. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058, 1061 (1941)).

firmative defenses or counterclaims, the Court must consider 12 U.S.C. § 1821(d)(13)(D) which provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any such act or omission of such institution or the Corporation as receiver.

Prior to the enactment of FIRREA, the Fifth Circuit had held that federal courts were divested of subject matter jurisdiction over all claims against thrift receiverships until the administrative claims process involving those claims was completed.[18] In 1989, the Supreme Court rejected this analysis holding "that Congress has not granted FSLIC the power to adjudicate claims against the assets of a failed savings and loan association under FSLIC receivership".[19] The Court refused to find that the FSLIC had the initial adjudicatory authority from the language in 12 U.S.C. § 1464(d)(6)(C), which provided that "no court may ... restrain or affect the exercise of power or function of a conservator or receiver."[20]

However, the plain language of 12 U.S.C. § 1821(d)(13)(D) supports and requires this Court's finding that it has no subject matter jurisdiction over the affirmative defenses at issue in this motion. One appellate court has "confirmed recently that the statute means just what it says, and, accordingly, that a claimant must first present its case to the RTC under the administrative procedure erected by FIRREA before seeking relief in federal court."[21] Since the claims against the former directors and officers are assets of the failed Sun Belt bank, the Court finds that the affirmative defenses asserted by the defendants seek a "determination of rights with respect" to Sun Belt thereby triggering the jurisdictional exclusions of the statute. Furthermore, the affirmative defense based on the FDIC's failure to mitigate damages relates to the acts or omissions of the Corporation as receiver. Whether raised by affirmative defense or counterclaim, any set off caused by the FDIC's failure to maximize or liquidate collateral will affect the failed bank's rights and assets. Thus, such a claim must first be presented to the agency before the Court has subject matter jurisdiction to consider the claim.[22]

The defendants seek to characterize their affirmative defenses as a counterclaim. The Court recognizes different jurisdictional problems under FIRREA as a result of the defendants' position. The affirmative defenses which have been characterized by defendants as "claims" clearly relate to "acts and omissions of the failed institution or the Corporation as receiver." As the record reflects, the FDIC as receiver for

---

**18.** *Federal Sav. and Loan Ins. Corp. v. Bonfanti*, 826 F.2d 1391, 1393 (5th Cir.1987) *cert. granted and judgment vacated by Zohdi v. Federal Sav. and Loan Ins. Corp.*, 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989), *on remand to Federal Sav. and Loan Ins. Corp. v. Bonfanti*, 870 F.2d 1032 (5th Cir.1989); *North Mississippi Sav. & Loan Ass'n v. Hudspeth*, 756 F.2d 1096, 1102 (5th Cir.1985) *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986).

**19.** *Coit Indep. Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989).

**20.** *Id.* 109 S.Ct. at 1370.

**21.** *R.T.C. v. Elman*, 949 F.2d 624 (2nd Cir.1991). *See also Meliezer v. Resolution Trust Co.*, 952 F.2d 879 (5th Cir.1992).

**22.** At oral argument, the Court also questioned its subject matter jurisdiction over the affirmative defenses because the defendants' failed to exhaust administrative remedies under the Federal Torts Claims Act (FTCA). 28 U.S.C. § 1346(b), §§ 2671–1680. The Court finds that the defendants are not barred in their counterclaims/affirmative defenses by the FTCA. *See* 28 U.S.C. § 2675(a).

Sun Belt bank has replaced the FSLIC as party plaintiff in the matter. With the enactment of 12 U.S.C. § 1821(d)(13)(D), federal district courts are divested of subject matter jurisdiction over claims which allege the FDIC failed to properly collect loans or manage the bank prudently absent exhaustion of administrative remedies under FIRREA.[23]

Only a few courts have explored the jurisdictional parameters that 12 U.S.C. § 1821(d)(13)(D) seeks to define. In *Rosa v. Resolution Trust Corp.*,[24] the Third Circuit Court of Appeals held that the jurisdictional bar in the statute applies to three situations: (1) claims for payment from the assets of a failed financial institution; (2) actions for payment from those assets; and, (3) actions for a determination of rights with respect to those assets.[25] The Third Circuit has also noted the that "Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821."[26]

The question of whether this jurisdictional bar also applies to a counterclaim has been answered affirmatively by this Court and several other courts which have considered the issue.[27] The defendants in this action maintain that the affirmative defense of failure to mitigate damages is actually a claim for recoupment. A counterclaim under Rule 13 of the Federal Rules of Civil Procedure is not limited to recoupment or set off, but may also defeat or diminish the recovery sought by the opposing party. Since the claim seeks to diminish the recovery of the FDIC and thereby would decrease Sun Belt's assets, the claim seeks affirmative relief which this Court is without jurisdiction to entertain under 12 U.S.C. § 1821(d)(13)(D).

The Court must next decide whether 12 U.S.C. § 1821(d)(13)(D) applies to this case.[28] Since the answers which asserted the counterclaims were filed by the defendants after the enactment of FIRREA,[29] the Court's jurisdiction over those claims is governed by FIRREA's divestiture provisions.[30]

23. The legislative history of FIRREA reveals "exhaustion of streamlined administrative procedures" was necessary to "allow the FDIC to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., reprinted in 1989 U.S.Code Cong. & Adm. News 86, 214–215.

24. 938 F.2d 383 (3rd Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608.

25. *Id.* at 393.

26. *Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 132 (3rd Cir.1991).

27. *Resolution Trust Corp. v. Plumlee,* 745 F.Supp. 1462 (E.D.Ark.1990) (Court dismissed defamation counterclaim for lack of jurisdiction after RTC sued defendant on promissory note); *Resolution Trust Corp. v. Residential Developers Fund Partners,* Slip. op. 90–1195, 1991 WL 193363 (E.D.Penn. September 17, 1991 (counterclaim dismissed for lack of subject matter jurisdiction under 12 U.S.C. § 1821(d)(13)(D)); *Resolution Trust Corp. v. Dubois,* 771 F.Supp. 154 (M.D.La.1991) (This Court dismissed counterclaim against RTC when RTC sued defendant on

promissory note); *Resolution Trust Company v. Shoreview Builders,* 252 N.J.Super. 408, 599 A.2d 1291 (1991) (Applying the jurisdictional limits on the court's power to hear counterclaim for unfair dealing and breach of fiduciary duty by the RTC after the RTC sued defendants on two promissory notes).

See also *Talmo v. Federal Deposit Ins. Corp.,* 782 F.Supp. 1538 (S.D.Fla.1991) (applying the jurisdiction limitation to a defense to a counterclaim filed by the FDIC).

28. It is interesting to note that on the issue of standard of care, the defendants argued that 12 U.S.C. § 1821(k) should be applied retroactively even if such application would result in dismissal of the FDIC's claims for simple negligence and negligent breach of fiduciary duty.

29. FIRREA was enacted on August 9, 1989.

30. *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). While it is true that subject matter jurisdiction is tested as of the time the complaint is filed, the counterclaim for recoupment was filed after FIRREA's provisions became effective and the Court must test its subject matter jurisdiction at that time.

The fact that the counterclaim might be compulsory under Rule 13 of the Federal Rules of Civil Procedure does not expand the jurisdiction of the Court to entertain the counterclaim. Rule 13(d) specifically provides that Rule 13 "shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits against the United States or an officer or agency thereof."

In order for a federal district court to have subject matter jurisdiction, it is necessary that the Constitution grant to the court the capacity to take jurisdiction, and an Act of Congress must supply it. "To the extent that such action is not taken, the power lies dormant." [31] Just as the Congress may enact statutes granting jurisdiction to the district court, Congress is free to take away from those courts the power to grant a particular remedy.[32]

The United States Supreme Court in *Finley v. United States* [33] requires the Court to find explicit statutory authority which permits the Court's exercise of jurisdiction over a counterclaim asserted by a defendant. The Court states that:

> Due regard for the rightful independence of governments requires that [federal courts] scrupulously confine their own jurisdictions to the precise limits which the statute has defined.[34]

The holding of *Finley* requires the Court to find some articulable statutory authority which would allow it to exercise jurisdiction over the counterclaims asserted by the defendant.[35] Not only is there no statutory basis for jurisdiction over the counterclaim, FIRREA contains a divestiture of jurisdiction as promulgated in 12 U.S.C. § 1821(d)(13)(D) which clearly prevents this Court from exercising ancillary jurisdiction.

The Court recognizes the jurisdictional void presented by its interpretation of FIRREA since it is possible to find subject matter jurisdiction over a case while not being able to adjudicate affirmative defenses and counterclaims which arise in the same law suit. However, this anomaly does not allow the Court to create jurisdiction where Congress has expressly forbidden the Court to exercise such authority. This Court is guided by the Supreme Court's language where Justice Scalia wrote:

> "What is of paramount importance is that Congress be able to legislate against a background of clear interpretive rules, so that it may know the effect of language it adopts." [36]

For reasons set forth above, IT IS ORDERED that the FDIC's Motion for Partial Summary Judgment on the Affirmative Defenses of Contributory Negligence, Failure to Mitigate Damages and Estoppel be and it is hereby GRANTED.

---

**31.** *The Mayor of Nashville v. Cooper*, 6 Wall 247, 252, 18 L.Ed. 851 (1867), *Kline v. Burke Const. Co.*, 260 U.S. 226, 233–234, 43 S.Ct. 79, 82–83, 67 L.Ed. 226 (1922); *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).

**32.** *Lauf v. E. G. Shinner & Co.*, 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872 (1938).

**33.** 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).

**34.** *Id.* at 552–53, 109 S.Ct. at 2008–09, *quoting Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934).

**35.** The Court recognizes that part of the holding in *Finley* was modified by the enactment of 28 U.S.C. § 1367. However, § 1367 became effective December 1, 1990 and is applicable only "to civil actions commenced on or after the date of enactment of this Act (Dec. 1, 1990)." Section 310(c) of Publ.L. 101–650.

**36.** 490 U.S. at 556, 109 S.Ct. at 2010.