**AMERICAN CASUALTY COMPANY OF READING PENNSYLVANIA, Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION, as Receiver for First Atlantic Savings and Loan Association, et al., Defendants.**

Civ. A. No. 91–3912(JCL).

United States District Court, D. New Jersey.

June 28, 1993.

Porzio, Bromberg & Newman, Robert J. Brennan, Gregor J. Schwartz, P.C., Morristown, NJ, for plaintiff.

Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for defendants.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

Presently before the Court are American Casualty Company of Reading, Pennsylvania's ("ACC") motion for summary judgment and the Resolution Trust Corporation's ("RTC") cross-motion for partial summary judgment. Having considered the briefs, the oral arguments, and the applicable law, the Court is of the opinion that ACC's motion should be granted and the RTC's motion should be denied.

### BACKGROUND

This is a declaratory judgment action brought by ACC against the RTC and the former directors and officers of a failed mutual savings and loan association, seeking a declaration that the directors' and officers' liability insurance written by ACC does not cover suits brought by the RTC against the former directors and officers.

First Atlantic Savings and Loan Association ("First Atlantic") was a mutual savings and loan association chartered under New Jersey law. ACC issued to First Atlantic Insurance Policy No. ZED 400711290 ("the Policy"). The Policy provided insurance coverage to the directors and officers of First Atlantic for losses incurred during the Policy period of April 5, 1989 to April 5, 1990. The Policy contained the following endorsement, known as the regulatory exclusion:

It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors or Officers based upon or attributable to:

any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency (all of said organizations and agencies hereinafter referred to as "Agencies"), including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise; whether such action or proceeding is brought in the name of such Agencies or by or on behalf of such Agencies in the name of any other entity or solely in the name of any Third Party.

On February 22, 1990, the Office of Thrift Supervision ("OTS") found that First Atlantic was in an unsafe or unsound condition and that grounds existed for the appointment of a receiver for First Atlantic under federal law, and on that basis appointed the RTC as Conservator for First Atlantic. On June 22, 1990, the OTS closed First Atlantic and replaced the RTC as Conservator for First Atlantic with the RTC as Receiver for First Atlantic. On that same date, the OTS created and chartered First Atlantic Federal Savings Association ("First Atlantic Federal").

Pursuant to the terms of a Purchase and Assumption Agreement between the RTC, as Receiver for First Atlantic, and First Atlantic Federal, substantially all the assets of First Atlantic, including potential claims against First Atlantic's former directors and officers, were transferred to First Atlantic Federal. OTS immediately placed First Atlantic Federal into conservatorship and appointed the RTC as Conservator.

On September 13, 1991, the OTS closed First Atlantic Federal and replaced the RTC as conservator with the RTC as Receiver for First Atlantic Federal. Also, on that same date, the RTC as Receiver for First Atlantic Federal assigned all claims against First Atlantic's former directors and officers to the RTC in its separate corporate capacity. Thus, all claims previously held by First Atlantic and its depositors are now owned by the RTC in its corporate capacity.

ACC filed a Complaint seeking declaratory relief. In its Complaint, ACC requests a ruling that the Policy provides no coverage for any action which may be brought against the directors and/or officers of First Atlantic by the RTC or any other regulatory agency. In its Complaint, ACC relies on several provisions of the Policy. However, for the purposes of this summary judgment motion, ACC relies solely on the regulatory exclusion.[1]

## DISCUSSION

 Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden of showing that no genuine issue of material fact exists rests initially on the moving party. Once the moving party has shown that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no issue for trial unless the non-moving party can demonstrate that there is sufficient evidence favoring the non-moving party to enable a reasonable fact finder to return a verdict in that party's favor. Anderson, 477 U.S. at 249, 106 S.Ct. at 2510. The court must view the facts and inferences therefrom in the light most favorable to the non-moving party. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

The issue before the Court is whether the regulatory exclusion is enforceable, and if so, whether the exclusion bars coverage for claims that the RTC intends to bring against First Atlantic's former directors and officers. The RTC argues that the regulatory exclusion is unenforceable because its application would contravene both federal and New Jersey law. ACC argues that the majority of courts addressing the enforceability of regulatory exclusions have held that these clauses are enforceable and therefore preclude coverage for any action a regulatory agency may bring against directors or officers.

Next, the RTC argues that even if the regulatory exclusion is enforceable, it would not bar coverage for claims which the RTC might bring. The RTC advances two arguments in support of its position. First, the RTC argues that the regulatory exclusion is

1. Because ACC's Complaint also seeks a declaration that coverage is barred pursuant to other provisions of the policy, the RTC only cross-moves for partial summary judgment.

not applicable to claims brought by the RTC (as opposed to the FDIC or the FSLIC). Second, the RTC argues that the regulatory exclusion only precludes coverage for secondary claims brought against directors or officers as a result of an action brought directly by the RTC against the directors or officers, not claims brought directly by the RTC. In response, ACC argues that the regulatory exclusion unambiguously provides that it precludes coverage for all claims brought directly by the RTC against directors and officers.

*Does the Regulatory Exclusion Conflict with Rights Granted the RTC under Federal and New Jersey Law?*

*Federal Law*

■ RTC argues that the regulatory exclusion deprives the RTC of its statutory rights under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, § 220(b), 103 Stat. 183, 265–66 (FIRREA). The RTC was established pursuant to 12 U.S.C. § 1441a. Pursuant to 12 U.S.C. § 1441a(b)(4), the RTC is granted the same powers and rights to carry out its duties as the FDIC has under Sections 11, 12, and 13 of the Federal Deposit Insurance Act (12 U.S.C. §§ 1821, 1822, and 1823). Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC as receiver or conservator succeeds by operation of law to:

> all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and assets of the institution.

Also, pursuant to 12 U.S.C. § 1823(d)(3), the FDIC in its corporate capacity has the same rights and powers as enumerated in § 1821(d)(2)(A)(i). Thus, the RTC correctly concludes that pursuant to §§ 1441a(b)(4), 1821(d)(2)(A)(i), and 1823(d)(3), it succeeds to "all rights, titles, powers, and privileges" of First Atlantic's depositors.

The RTC argues that under the Policy, First Atlantic's depositors were entitled to receive proceeds from the Policy to satisfy derivative claims brought against the directors and officers. Endorsement 11 to the Policy, an "Insured v. Insured" exclusion, provides:

> It is understood and agreed that the Insurer shall not be liable to make any payment for Loss ... which is based upon or attributable to any claim made against any Director by any other Director or Officer or by the Institution ..., except for a shareholder derivative action brought by a shareholder of the Institution other than an Insured.

First Atlantic was a mutual savings and loan association whose shareholders were its depositors. *See* N.J.S.A. §§ 17:12B–5(7), 17:12B–74 (West 1984) (mutual savings and loan association owned by, *inter alia*, "savings members" defined as "a person who holds an account or a savings deposit"); *In re Polish Am. Bldg. and Loan Ass'n*, 123 N.J.L. 396, 398, 8 A.2d 832 (Sup.Ct.1939) (predecessor statute to § 17:12B–74 described depositors alternatively as "members or shareholders"). Thus, the Policy expressly provides coverage for derivative claims asserted against the directors and officers by First Atlantic depositors.

The RTC argues that since under the Policy First Atlantic's depositors were entitled to receive proceeds from the Policy to satisfy derivative claims brought against the directors and officers, the RTC should also be able to receive proceeds from the Policy to satisfy derivative claims brought against the directors and officers. The RTC argues that the regulatory exclusion should not be enforced so as to deprive the RTC of its statutory right, pursuant to § 1821(d)(2)(A)(i), to succeed to the depositors' rights.

■ A contract which is contrary to the requirements of a statute is void whether expressly made so by the statute or not. *Lakos v. Saliaris*, 116 F.2d 440, 444 (4th Cir.1940); *see also RTC v. Home Sav. of Am.*, 946 F.2d 93, 96 (8th Cir.1991) ("In general, a contract entered in violation of federal statutory or regulatory law is unenforceable."); *Freedman Truck Center, Inc. v. General Motors Corp.*, 784 F.Supp. 167, 178 (D.N.J.1992).

Several courts have already addressed the enforceability of regulatory exclusions similar

to the one at issue here. In *FDIC v. American Casualty Co. of Reading, Pa. ("Gary")*, 975 F.2d 677 (10th Cir.1992), the Tenth Circuit enforced a regulatory exclusion and rejected the FDIC's argument that enforcement of the regulatory exclusion would violate public policy because it would interfere with the FDIC's statutory right pursuant to § 1821(d)(2)(A)(i) to succeed to "all rights, titles, powers, and privileges" of the failed bank's shareholders and depositors.[2]

In *Gary*, the Tenth Circuit held that although pursuant to § 1821(d)(2)(A)(i), FIRREA enhanced the enforcement powers of the FDIC, Congress did not intend that FIRREA have any impact on the enforceability of regulatory exclusions. *Id.* at 681. The court relied on § 1821(e)(12)(B), another FIRREA provision, in support of its position. Section 1821(e)(12) provides as follows:

(12) AUTHORITY TO ENFORCE CONTRACTS.

(A) IN GENERAL.—The conservator or receiver may enforce any contract, other than a directors' or officers' liability insurance contract or a depository institution bond, entered into by the depository institution notwithstanding any provision of the contract providing for termination, default, acceleration, or exercise of rights upon, or solely by reason of, insolvency or the appointment of a conservator.

(B) CERTAIN RIGHTS NOT AFFECTED.—No provision of this paragraph may be construed as impairing or affecting any right of the conservator or receiver to enforce or recover under a directors' or officers' liability insurance contract or depository institution bond under other applicable law.

12 U.S.C. § 1821(e)(12); 12 U.S.C. § 1441a(b)(4) (applying provision to the RTC).

In *Gary* the Tenth Circuit also noted that FIRREA's legislative history supports the conclusion that Congress intended to remain neutral on the issue of whether regulatory exclusions were enforceable. As noted in

*Gary*, the section by section analysis of FIRREA states:

The FSLIC and FDIC have frequently challenged clauses in [directors' and officers' liability insurance contracts], contending that the clauses are unenforceable. [18 U.S.C. § 1821(e)(12) ] remains neutral regarding such litigation and regarding the FDIC's ability under other provisions of State and Federal law, current or future, to pursue claims on such contracts or bonds.

*Id.* at 681 *quoting* S.Rep. No. 19, 101st Cong. 1st Sess. 315 (1989).

In *Gary*, the Tenth Circuit also noted the comments of Senator Garn, a sponsor and floor manager of the FIRREA legislation who reported to the Senate on the action taken by the conference committee:

With respect to Directors' and Officers' liability insurance contracts, there has been a substantial split in the decisions relating to the validity of regulatory exclusion clauses that prohibits a regulator from enforcing rights under the contract.

It is not the intent of the conferees to influence these decisions, or to affect the development of case law or statutory provisions relating to the validity of these clauses ... The intent of the conferees is to remain neutral on these matters.

*Id.* at 682 *quoting* 135 Cong.Rec. S10198 (daily ed. Aug. 4, 1989).

Also, in *Fidelity & Deposit Co. of Md. v. Conner*, 973 F.2d 1236 (5th Cir.1992), the Fifth Circuit enforced a regulatory exclusion and rejected the FDIC's argument that enforcement of the regulatory exclusion would "seriously impai[r] the congressional policy reflected in FIRREA." *Id.* at 1242. The Tenth Circuit, in rejecting what it termed the FDIC's more general public policy challenge to enforcement of the regulatory exclusion, concluded that the regulatory exclusion does not deprive the FDIC of its statutory rights under FIRREA. Like the Tenth Circuit, the Fifth Circuit held that FIRREA's legislative history reveals that Congress intended to be

---

**2.** Although most of the cases which have addressed whether the regulatory exclusion is in conflict with federal law involved cases brought

by the FDIC, the analysis is the same for cases involving the RTC.

neutral regarding regulatory exclusions. *Id.* at 1242.

Other courts have upheld the regulatory exclusion for reasons different than those set forth in *Conners* and *Gary.* In *Federal Deposit Insurance Corp. v. Zaborac,* 773 F.Supp. 137 (C.D.Ill.1991) the court, in rejecting the FDIC's argument that the regulatory exclusion was in direct conflict with § 1821(d)(2)(A)(i), held,

> Any stockholder of the Bank in this case had the right and the power to sue the [insured] derivatively for wrongful acts alleged in this action. The American Casualty policy provides coverage for shareholder derivative claims so that any stockholder who obtains a judgment in such an action has the right and power to garnish the proceeds of the policy to satisfy the judgment. Because federal law gives the FDIC the same rights and powers as these stockholders, the FDIC contends that the regulatory and insured versus insured exclusions cannot be enforced against the FDIC because doing so would deprive the FDIC of the rights and power conferred on it by statute.

> \* \* \* \* \* \*

> [T]his court simply does not believe that the Regulatory Exclusion excluding the FDIC undermines any congressional purpose or that it annuls the FDIC's powers. In this case, the FDIC assumed all of the rights given under the insurance policy. No rights have been taken away from the FDIC. The FDIC simply did not have the right to sue under the policy because the Bank did not contractually negotiate for this type of coverage.

*Id.* at 145. *See also FDIC v. American Casualty Co.,* 814 F.Supp. 1021 (D.Wyo.1991) ("*Saratoga* ") (Gleim Aff., Ex. H) (holding that regulatory exclusions are "limitations on the assets of the institution, directors and officers, and not on the rights or privileges of persons bringing suit"); *Continental Casualty Co. v. Allen,* 710 F.Supp. 1088 (N.D.Tex. 1989) (rejecting the public policy argument since there is no statutory requirement for a bank to obtain directors' and officers' liability insurance).

■ The Court is of the opinion that the regulatory exclusion is not in conflict with § 1821(d)(2)(A)(i) of FIRREA because Congress intended that FIRREA be neutral on that issue. The Court finds the reasoning of both *Conners* and *Gary* persuasive. Although § 1821(d)(2)(A)(i) of FIRREA permits the RTC to succeed to all rights, title, powers, and privileges of the stockholders and depositors, § 1821(e)(12) makes certain that regulatory exclusions would not be affected by any provision of FIRREA including § 1821(d)(2)(A)(i).

In any event, even if Congress had not enacted § 1821(e)(12), the Court is of the opinion that the regulatory exclusion would not be in conflict with § 1821(d)(2)(A)(i). The regulatory exclusion is a limitation on the assets of First Atlantic. In this case, the RTC assumed all the rights that First Atlantic contracted for under the directors' and officers' policy. No rights have been taken away from the RTC. The RTC never had the right to sue under the policy because First Atlantic did not negotiate for this type of coverage. Pursuant to § 1821(d)(2)(A)(i), the RTC may bring a derivative suit against the former directors and officers of First Atlantic. However, RTC simply cannot seek recovery under the Policy. *Accord, Federal Deposit Insurance Corp. v. Zaborac,* 773 F.Supp. 137 (C.D.Ill.1991).

The cases cited by the RTC do not compel a different conclusion. The RTC cites *FDIC v. Bank of Boulder,* 911 F.2d 1466 (10th Cir.1990) (*en banc* ), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991), where the Tenth Circuit considered whether a non-assignability provision of a letter of credit and a state law to the same effect were enforceable in the face of a federal statute granting the FDIC in its corporate capacity the right "to purchase any ... assets" from the FDIC as receiver for a failed bank. *Id.* at 1472–76, 1479–80.[3] The court held that neither state statutory nor private contractual restrictions on assignment could be enforced to bar the FDIC as receiver from transferring the failed institution's contractu-

---

3. *See* 12 U.S.C. § 1823(d)(1).

al rights in the letter of credit to the FDIC in its corporate capacity, in the face of a federal statute expressly granting the FDIC that right.

Second, in *NCNB Texas Nat'l Bank v. Cowden,* 895 F.2d 1488 (5th Cir.1990), the Fifth Circuit, following *Boulder,* held that the FDIC had authority to transfer fiduciary appointments held by an insolvent bank to a federally created bridge bank under a statute giving the FDIC the power to "transfer any assets" of an insolvent institution to such a bridge bank, notwithstanding provisions in the relevant trust agreements prohibiting the transfer of such appointments.

These cases are distinguishable from the present case because they deal with an explicit conflict between a federal statute and the provisions of a contract. In *Boulder* a statute that granted the FDIC the right to purchase all assets, including letters of credit, conflicted with a provision that forbade transfer. In *NCNB,* the conflict was between a federal statute empowering the FDIC to transfer assets and a trust provision that forbade transfer. In the instant case, no such conflict exists.

*State Law*

■ The RTC, as receiver of a state-chartered institution such as First Atlantic, succeeds to the powers of receivers of state-chartered mutual savings and loan associations granted by New Jersey state law. Specifically, 12 U.S.C. § 1821(c)(3)(B) provides:

> In addition to the powers conferred and the duties related to the exercise of such powers imposed by State law on any conservator or receiver appointed under the law of such State for an insured State depository institution, the [FDIC], as conservator or receiver ... shall have the powers conferred and the duties imposed by this section on the [FDIC] as conservator or receiver.

12 U.S.C. § 1441a(b)(4)(A) (granting the RTC the same rights and powers as the FDIC). Under New Jersey law receivers for a state-chartered thrift institution have the power to "institute and defend actions by or on behalf of" failed institutions, *N.J.S.A.* § 14A:14–5(b) (West 1984). Several New

Jersey decisions establish that the receiver's power to bring actions "by or on behalf of the corporation" encompasses the power to represent the creditors and shareholders in derivative suits against the officers and directors of the institution. *See State v. East Shores, Inc., et al.,* 131 N.J.Super. 300, 309, 329 A.2d 585 (Ch.Div.1974); *Cohen v. Miller,* 5 N.J.Super. 451, 68 A.2d 421 (1949). Also, a contractual provision which conflicts with the RTC's power under New Jersey law is unenforceable. *See Rocker v. Cardinal Building & Loan Ass'n of Newark,* 13 N.J.Misc. 397, 179 A. 667 *aff'd,* 119 N.J.L. 134, 194 A. 865 (1937); *Bucsi v. Longworth Building & Loan Ass'n,* 119 N.J.L. 120, 194 A. 857 (N.J.1937).

The RTC argues that by attempting to preclude the RTC from enforcing First Atlantic's policy on behalf of the depositors of the institution, the regulatory exclusion conflicts with the RTC's power under New Jersey law to bring an action "by or on behalf of" First Atlantic—by asserting the derivative rights of First Atlantic's depositors.

In opposition, ACC argues that the regulatory exclusion does not directly contravene state law. ACC argues that the RTC is not barred from bringing a derivative action against the former directors and officers of First Atlantic, but ACC is not required to provide coverage for any liability which the directors and officers might incur.

Furthermore, ACC argues that New Jersey public policy does not require state-chartered banks to carry directors' and officers' liability insurance:

> Any bank of this State shall have the power to purchase and maintain insurance on behalf of any corporate agent against any expenses incurred in any proceeding and any liabilities asserted against him by reason of his being or having been a corporate agent, whether or not the bank would have the power to indemnify him against those expenses and liabilities under the provisions of this section.

*N.J.S.A.* § 17:9A–250(I) (1985 & Supp.1992).

■ The Court is of the opinion that the regulatory exclusion does not conflict with the laws or policy of New Jersey. First, the regulatory exclusion does not conflict with

*N.J.S.A.* § 14A:14–5(b), since it does not prevent the RTC from bringing a derivative action by or on behalf of First Atlantic, though the regulatory exclusion may limit the source of recovery if the RTC is successful. Second, the Court is of the opinion that the regulatory exclusion does not conflict with any New Jersey public policy. Since directors' and officers' liability insurance is not required by statute, policies which, limit coverage such as the instant policy are not contrary to public policy. *Accord, Gary v. American Casualty Co. of Reading, Pa.,* 753 F.Supp. 1547, 1553 (W.D.Okl.1990); *Continental Casualty Co. v. Allen,* 710 F.Supp. 1088, 1099 (N.D.Tex.1989).

The Court concludes that the Regulatory Exclusion is enforceable and is not contrary to federal or New Jersey law or public policy. *Does the Regulatory Exclusion Unambiguously Preclude Coverage for Claims Brought by the RTC?*

 Under New Jersey law, exclusionary language that is reasonably susceptible to more than one interpretation is ambiguous, and the Court must adopt the interpretation that favors the insured. *Allen v. Metropolitan Life Insurance Co.,* 44 N.J. 294, 208 A.2d 638 (1965). New Jersey courts resolve ambiguities in insurance contracts against the drafters, typically the insurers. *Spark v. St. Paul Ins. Co.,* 100 N.J. 325, 336, 495 A.2d 406 (1985); *Vargas v. Calabrese,* 714 F.Supp. 714, 719 (D.N.J.1989). *See also, Allen,* 44 N.J. at 305, 208 A.2d 638 ("[New Jersey Courts] have consistently construed policy terms strictly against the insurer and where several interpretations were permissible, we have chosen the one most favorable to the assured.")

 However, in interpreting an insurance policy under New Jersey law, courts enforce the policy as written when its meaning and language are clear and unambiguous. *Flynn v. Hartford Fire Ins.,* 146 N.J.Super. 484, 370 A.2d 61 (1977). If there is no ambiguity, a strained or distorted construction will not be indulged in and the clauses in an insurance policy will be given their ordinary and usual meaning. *Wells v. Wilbur B.*

*Driver Co.,* 121 N.J.Super. 185, 296 A.2d 352 (1972). Courts applying New Jersey rules of policy construction read provisions so as to avoid ambiguities, if the plain language of the contract permits. *First State Underwriters v. Travelers Ins. Co.,* 803 F.2d 1308, 1311 (3d Cir.1986).

ACC argues that the policy language is unambiguous and therefore only one interpretation of the contract is possible. ACC argues that claims brought against directors and officers by any regulatory agency, including the RTC, are not covered under the Policy.

The RTC argues that the contract is ambiguous and must be interpreted against ACC. The RTC argues that it is unclear whether the RTC is within the regulatory exclusion as "any other ... regulatory agency." The RTC argues that the term "regulatory agency" as used in the regulatory exclusion covers agencies which regulate the ongoing operations of solvent institutions, as opposed to an agency whose responsibility is to manage and resolve the assets of failed institutions. 12 U.S.C. 1141a(b)(3).

The RTC argues that in construing broad, exculpatory language New Jersey courts invoke the rule of *ejusdem generis. Seitz v. Mark–O–Lite Sign Contractors, Inc.,* 210 N.J.Super. 646, 649–50, 510 A.2d 319 (Law Div.1986). The doctrine of *ejusdem generis* holds that "where general words follow particular words, in an enumeration describing the subject, the general words are construed to embrace only objects similar in nature to those enumerated by the antecedent's specific words." *Ariston Airline & Catering Supply Co., Inc. v. Forbes,* 211 N.J.Super. 472, 481, 511 A.2d 1278 (Law Div.1986) (quoting *In re Armour,* 11 N.J. 257, 94 A.2d 286 (1953)). The RTC asserts that in the instant case, the phrase "any other ... regulatory agency," comes after the following enumeration of specific agencies: the Federal Deposit Insurance Corporation ("FDIC"), the Federal Savings & Loan Insurance Corporation ("FSLIC"), the Comptroller of the Currency, the Federal Home Loan Bank Board ("FHLBB"),[4] and any other depository insur-

---

4. In FIRREA, the FHLBB and FSLIC were abolished, and the Office of Thrift Supervision

ance agency. Thus, the RTC concludes that the term "any other ... regulatory agency" must be defined in relation to those specifically enumerated.

The RTC argues that each of the agencies specifically enumerated in the regulatory exclusion, together with other agencies—the Federal Reserve Board ("FRB") and, since FIRREA, the OTS—has (or had in the case of the FHLBB and FSLIC) responsibility for monitoring and regulating the ongoing operations of banks and thrifts. The RTC argues that each of these regulatory agencies has (or had in the case of the FHLBB and FSLIC) nearly identical regulatory powers over the operations of the banks and thrifts for which they had primary responsibility. These powers include the power to issue cease and desist orders against an institution or an individual, to suspend or remove anyone affiliated with the financial institution, and to issue regulations and conduct bank examinations to ensure compliance with reporting requirements for monetary transactions. See 12 U.S.C. §§ 1813(q), & 1818. The RTC argues that Congress did not give the RTC any of these regulatory powers and has instead charged the RTC with essentially one function: the responsibility to "manage and resolve" the assets of certain failed institutions. 12 U.S.C. § 1441a(b)(3). The RTC argues that it has a limited purpose and limited powers, with no direct power over the operations of healthy financial institutions.

In response, ACC argues that the regulatory exclusion is clear and unambiguous. ACC argues that the RTC is clearly a regulatory agency under the regulatory exclusion, and that the RTC's strained and unreasonable reading should not be adopted by this Court. Furthermore, ACC notes that the principle of ejusdem generis is merely an aid to interpretation and should not be applied to subvert the plain meaning and obvious intent of the language used. Russell Co. v. United States, 261 U.S. 514, 43 S.Ct. 428, 67 L.Ed. 778 (1923).

In support of its position, ACC relies on American Casualty Company of Reading, Pennsylvania v. Baker, 758 F.Supp. 1340 .(C.D.Cal.1991) and National Fire Ins. Co. of Pittsburgh, Pa. v. RTC Civil Dkt. 92–1157 (S.D.Tex. Aug. 13, 1992) (Schwartz Aff. at Ex. A). In both cases it was held that the RTC was a regulatory agency within the meaning of the regulatory exclusion. The regulatory exclusion before the Baker and National Fire courts was the same as the regulatory exclusion before this Court.

In Baker the district court considered and rejected the RTC's argument that "regulatory agency" as used in the regulatory exclusion is limited to agencies which regulate the ongoing operations of solvent institutions. The court concluded that the parties clearly would have enumerated the RTC in the regulatory exclusion if the agency had existed when the contract was drafted. The court noted that the RTC replaced FSLIC as conservator/receiver for failed thrifts, and FSLIC was specifically named in the regulatory exclusion. The court further noted that the FDIC, specifically named in the regulatory exclusion, was FSLIC's manager and now is the exclusive manager of the RTC, and that the FDIC will replace the RTC as receiver and conservator when the RTC is terminated, which according to current legislation will occur no later than December 31, 1996. Id. at 1346. The Baker court concluded that "it would be illogical ... to conclude that the policy exclusion does not extend to the [RTC] ... [although the RTC] has assumed functions previously performed by one agency named in the exclusion, FSLIC, and is essentially controlled by another agency named in the exclusion, FDIC." Id. at 1346.

The Court agrees with the reasoning set forth in the Baker opinion. RTC is FSLIC's successor as conservator/receiver for failed thrifts and FSLIC is listed in the regulatory exclusion. RTC, which did not exist at the time the policy was issued, was not and could not have been enumerated in the regulatory exclusion.[5] If the RTC did

("OTS") of the Department of Treasury was created and assumed the regulatory duties previously assigned to the FHLBB and the FSLIC. 12 U.S.C. §§ 1813(q), 1818.

**5.** It is undisputed that the RTC did not exist when the First Atlantic Policy was issued. The

First Atlantic Policy was issued in February, 1989. (Affidavit of Kristi Gleim, Ex. A). The RTC did not come into existence until the enactment of FIRREA on August 9, 1989.

not replace FSLIC and FSLIC was still in existence, the regulatory exclusion would operate to bar coverage of claims based upon or attributable to an action brought by the FSLIC. Thus, if the Court were to adopt RTC's interpretation of the regulatory exclusion claims brought by FSLIC would be subject to the regulatory exclusion but identical claims brought by the RTC would not. The Court finds that this reading of the regulatory exclusion is strained and unreasonable and therefore rejects the RTC's interpretation of the regulatory exclusion. RTC is a regulatory agency within the meaning of the regulatory exclusion.

The Court is also of the opinion that the regulatory exclusion was intended to exclude coverage for claims brought by the successor of an enumerated regulatory agency. Since any claim based upon or attributable to an action brought by FSLIC, an enumerated agency, would be subject to the regulatory exclusion, the Court finds that similar claims brought by the RTC, as FSLIC's successor, are also subject to the regulatory exclusion.

The parties assert conflicting arguments as to whether Congress views the RTC as a regulatory agency. However, the Court fails to see the relevance of these conflicting arguments. The issue before the Court is whether the parties intended the term "other regulatory agency" to include the RTC. Therefore, Congress' position as to whether the RTC is a regulatory agency is not relevant to the contract interpretation issue presently before the court.

The RTC also argues that the parties only intended to bar secondary claims, which the RTC defines as claims that are asserted against officers and directors by third parties (such as borrowers from the institution or providers of professional services to the institution), which are based upon or attributable to claims first asserted against such third parties by a regulatory agency or by the RTC. The RTC argues that the exclusion does not bar coverage for claims brought

directly by the RTC against the directors and officers of ACC.

▮▮▮ This Court agrees with the vast majority of courts to consider this question, that the RTC's interpretation of the regulatory exclusion is strained and unreasonable.[6] *See e.g., St. Paul Fire and Marine Ins. Co. v. FDIC,* 968 F.2d 695, 701 (8th Cir.1992) citing *American Casualty Co. v. FDIC,* 944 F.2d 455, 460 (8th Cir.1991) ("when read as a whole, the regulatory exclusion covers any claim, direct or secondary, brought against the directors and officers of the bank by the FDIC in any capacity"); *FDIC v. American Casualty Co.,* 975 F.2d 677, 690 (10th Cir. 1992) (awkward "based upon or attributable language" simply acts as a link between general excluding language and the specific types of claims excluded); *FSLIC v. Shelton,* 789 F.Supp. 1367 (M.D.La.1992) (holding that phrase "based upon or attributable to" is not ambiguous and rejecting secondary suit construction); *American Casualty Co. v. Baker,* 758 F.Supp. 1340, 1347 (C.D.Cal.1991) (regulatory exclusion is not ambiguous and that the FDIC's reading of the exclusion is strained); *Gary v. American Casualty Co.,* 753 F.Supp. 1547, 1150–51 (W.D.Okla.1990) ("[r]eading the [exclusion] as a whole, without placing undue emphasis on the words 'based upon or attributable to,' it is clear the insured's intent was to exclude coverage for any Loss resulting from any action brought by or on behalf of the FDIC in any capacity against a bank director or officer"); *FDIC v. Zaborac,* 773 F.Supp. 137 (C.D.Ill.1991) (holding similar regulatory exclusion is not ambiguous and rejecting secondary suit construction).

The RTC recognizes that most courts have rejected their interpretation of the regulatory exclusion as strained and unreasonable. However, the RTC argues that certain documents presented in this case, but not presented in other litigation, support its position.

---

**6.** The regulatory exclusions in the cases cited *infra* are nearly identical to the regulatory exclusion at issue here. Any differences are insignificant, and have no impact on the ambiguity arguments.

As noted by the Court at oral argument, these documents have no impact on the Court's conclusion that the regulatory exclusion unambiguously bars coverage for claims brought directly by the RTC.[7] The Court concludes that the Policy clearly and unambiguously precludes coverage for any loss in connection with a claim based on an action brought by the RTC. Accordingly,

IT IS on this 25th day of June, 1993 **ORDERED** that ACC's motion for summary judgment is granted;

**IT IS FURTHER ORDERED** that the RTC's cross-motion for partial summary judgment is denied.

---

7. The documents the RTC refers to are confidential, and this motion was filed under seal. ACC filed a notice of motion for a protective order on the ground that the Court should not consider these documents because they were deemed privileged by Magistrate–Judge Hedges. However, in light of the fact that the Court does not find these documents relevant to the instant motion, the Court need not address ACC's arguments for a protective order.